30  177
102  194

————◦◦◦◦————

SPALDING, Appellant, v. CONZELMAN, Respondent.

1. If a person, already in possession of premises as tenant, verbally contract with the owner for a new term, his mere continuance in possession after the making of the alleged contract is not an act of part performance such as will justify a decree for the specific enforcement of the verbal contract.
2. In order that improvements made by a tenant continuing in possession under such circumstances may be entitled to much consideration, as bearing upon his right to a decree for a specific performance, they should be of such marked and important character as not to be naturally reconcilable with the continuance of the old relation.

*Appeal from St. Louis Land Court.*

*A. M. & S. H. Gardner,* for appellant.

I. The plaintiff was entitled to a decree. Possession was given to plaintiff; he expended money and made repairs and paid the instalments of rent. (15 Mo. 365; 2 Story's Eq. § 763.) It would be a fraud upon plaintiff if the contract

is not fully executed. (20 Mo. 81.) Under the pleadings it was not incumbent on plaintiff to prove a written contract. Defendant does not set up in his answer the statute of frauds. (11 Mo. 659.)

*Spies & Burt*, for respondent.

EWING, Judge, delivered the opinion of the court.

This was an action for the specific performance of an alleged agreement for the lease of a house and lot in the city of St. Louis.

The petition alleges that the defendant Conzelman, on or about the 9th of August, 1856, agreed with the plaintiff to lease him for the term of seven years, at the annual rent of eight hundred dollars, the premises therein described, a memorandum of which agreement in writing, in the form of a lease, was made by the defendant, and which is set out in the petition. It is further alleged that it was agreed by the parties that the lease to be made by the defendant was to contain certain covenants not specified in the memorandum which is set out in the petition ; that the defendant promised to make and deliver to plaintiff a sufficient lease in writing of the premises on the terms contained in the memorandum, and certain others not therein specified ; and that relying on said agreement plaintiff took possession of the property and expended a large sum of money in repairing it in a manner suitable to his business as a dentist ; that he had paid defendant eight hundred dollars, being four quarterly instalments of rent, according to the terms of said leasing ; that defendant has refused to execute a lease in writing or to sign any memorandum in writing by which the plaintiff would be legally entitled to the possession.

The answer denies the allegations of the petition, and especially that there was any agreement or memorandum in writing to lease the premises ; but alleges that he proposed a lease to the plaintiff, and that he refused to accept the same, and in consequence of such refusal it was never

signed by himself or plaintiff; denies that the plaintiff took possession of the property in consequence of any promise of defendant, but on the contrary that at and before the said 9th of August, 1856, plaintiff had possession of the same and had occupied and used the same for his said business; denies the payment of eight hundred dollars by plaintiff, but admits that he received six hundred dollars, three quarters' rent of said house, during the time occupied by the plaintiff; states that several propositions had been made verbally between the parties respecting a lease, but none of them were ever agreed upon, nor intended as a lease or a memorandum in writing for a lease; that a lease was drawn up, but plaintiff refused to sign it, and the same was therefore never signed by defendant, and that the plaintiff was regarded as tenant at will only.

On the trial the plaintiff read in evidence the memorandum of lease or paper set out in the petition, having first proved it to be in the handwriting of the defendant. This paper bears date August 9th, 1856, and purports to lease the property for seven years, to commence at its date, at the annual rent of eight hundred dollars, payable in quarterly instalments; it is not signed by either of the parties. A witness of the plaintiff, Franklin, who was the defendant's clerk, testifies to a conversation between the parties respecting a lease of the premises in question, in which he heard the plaintiff ask the defendant if he would sign it, to which the latter replied he had no objection to having a fire clause added to it; that the paper read in evidence was the one plaintiff had, and that defendant read it over at the time. The witness further stated that the plaintiff, in May, 1856, handed him, witness, a paper for defendant to sign, and said they had better have it fixed. In a few hours the plaintiff returned, (both parties occupying different tenements of the same house,) when the defendant remarked that that was the same paper that plaintiff had handed him before; thereupon plaintiff brought another lease which the defendant said was a little better than the other. A conversation ensued, in

which the defendant remarked they could not agree, and that he would not sign any lease,; that he had drawn up one which the plaintiff would not sign; whereupon, being asked by the plaintiff if he refused to give him a lease, he answered that he did. It was proved that repairs were made by the plaintiff, consisting of papering, painting, &c., in the fall of 1856, of the value of some one hundred and fifty dollars. Receipts for rent, amounting to six hundred dollars, were produced, the last of which was for two hundred dollars— the instalment for the quarter ending August 9, 1857. This was the last rent received; the rent for the three months next thereafter was tendered to defendant, but was refused by him on the ground that a suit was pending between them about the house. It was also proved that the plaintiff was in the house before the defendant purchased it. A lease from one Cutter to the plaintiff was read in evidence, having been assigned to the defendant. This lease bears date 8th January, 1853, and is for the term of three years, commencing at said date, at the annual rent of eight hundred dollars, payable in quarterly instalments, and it stipulates, among other things, that all repairs deemed necessary by said lessee are to be made at his own expense.

The court gave the following instruction at the instance of the plaintiff: " That if the court find from the evidence that defendant, on or about the 9th of August, 1856, agreed to execute and deliver a written lease to the plaintiff of the premises in controversy, for the term of seven years, for an annual rent of eight hundred dollars, and that plaintiff was in possession of said premises under said agreement and made valuable improvements to the same before the refusal of defendant to execute a lease, and had paid to defendant the sum of eight hundred dollars by way of rent, then the plaintiff is entitled to a decree for the specific execution of the contract."

The plaintiff asked the following instruction, which was refused: " That the paper read in evidence by the plaintiff, proved to be in the handwriting of defendant, purporting to

be an unexecuted lease from the defendant to the plaintiff, is sufficient evidence of an agreement to lease, and of the terms and conditions of said agreement; that the plaintiff is entitled to a decree requiring said defendant to execute and deliver to said plaintiff a lease for said premises, for the terms and upon the conditions set out and specified in the paper read in evidence by the plaintiff and purporting to be an unexecuted lease from the defendant to the plaintiff."

The theory of the plaintiff's case, according to the instruction given at his instance, and as argued by his counsel, would seem to be that there was a parol contract between the parties to give a lease of the premises, which he is entitled to have specifically executed by reason of such part performance as takes the case out of the statute of frauds; and that the paper read in evidence may be resorted to as showing the terms of the contract. The instruction refused assumes that there was an agreement to execute a lease, and declares that the paper is sufficient evidence of it.

The meaning of the instruction is certainly not very clear. The paper, being unexecuted, could be no evidence of an agreement unless it had been made so by being referred to in some written contract entered into between the parties and thus made a part of it, and it is not pretended that any such writing exists. But had there been a verbal agreement to execute a lease, upon what rule of evidence would this paper be admissible for any purpose upon the state of facts in this case? It is not pretended that there is any thing in the case that would warrant its introduction as a memorandum made by any witness at the time, which he could have used to refresh his recollection of the terms of the alleged agreement, and as such it could not, of course, be used as independent evidence. The defendant in his answer admits that there was a verbal letting, but for no definite time or specified terms, and that the plaintiff then being in possession, he regarded him as a tenant at will only. But there was no evidence of an agreement to give a lease for the term and

according to the conditions contained in the paper referred
to.    The plaintiff's own witness clearly proves that the par-
ties could not agree upon a lease, and that none of the pro-
positions were accepted.    There was nothing upon which to
predicate the instruction, and it was rightly refused.

With regard to the question of part performance, the evi-
dence shows that the plaintiff was in possession at the time
of the negotiation, and that it was not assumed by him or
delivered to him in pursuance of the contract alleged.    If
one, already in possession of land as tenant, verbally contract
with the owner for a new term, his merely continuing in
possession after the making of the alleged contract is not an
act of part performance within the meaning of the rule so
as to justify a decree for a lease according to the contract.
The continued holding does not necessarily imply any new
agreement, but is naturally and properly referable to the old
tenancy.    (Maphet v..Jones, 1 Swanst. 172; Chinly v. Barn-
hurst, 14 Penn. 260.)    The mere taking or holding posses-
sion is unimportant.    *Quo animo* it is taken or held, is to be
considered, and this question is not allowed to be answered
by parol proof of the agreement between the parties.    (3
Ves. 378.)    So also the mere payment of additional rent,
where an agreement for a new lease is set up, is a cir-
cumstance of little importance, inasmuch as it may be re-
ferred to a holding from year to year after the expiration
of the old lease, or. to other inducements to its payment.
(Brown, Stat. Frauds, § 479.)    Whether improvements made
by the tenant continuing in possession is a circumstance enti-
tled to much consideration, as tending to show a change in
the holding, would of course depend upon their nature and
character.    To give this fact any weight in such a case, it is
said that the improvements should be of such marked and
important character as to be not naturally reconcilable with
the continuance of the old relation.    In Brennan v. Ballin, 2
Dru. & War. 349, Chancellor Sugden said that where the
improvements which were made and the alleged expendi-

türe by the tenant were no more than what would take place in the ordinary course of husbandry, it would be against all authority to say that such acts amounted to part performance.

Judgment affirmed; the other judges concurring.