EMMEL *et al.* v. HAYES *et al.*, *Appellants.*

1. **Parol Contract to Convey**: SPECIFIC PERFORMANCE : PART PER-
FORMANCE. Taking possession of a tract of land by a vendee, with
the consent of the vendor, under a parol agreement by the latter
to convey to the vendee, will only take the case out of the statute
of frauds and authorize compulsory specific performance, where
such taking possession is pursuant to and referable solely to the
parol contract.

2. ———— : ———— : ————. Mere continuance of possession does not
constitute part performance.

3. **Practice**: CLOUD ON TITLE : ISSUES OF FACT : VERDICT OF JURY.
The action of the trial court in adopting the verdict of the jury
upon certain issues of fact in an equitable proceeding to remove a
cloud upon title *held* not to be error.

4. ———— : EVIDENCE : WITNESS. A vendee under an alleged parol
purchase is not competent to testify as to improvements claimed
to have been placed upon the land by him, where the vendor is
dead.

5. **Parol Contract for Purchase of Land**: SPECIFIC PERFORM-
ANCE : IMPROVEMENTS. One already in possession of land who con-
tinues such possession under an alleged parol contract of purchase
cannot demand specific performance upon the ground of improve-
ments made upon the land where they are only such as are made in
the ordinary course of husbandry.

*Appeal from Greene Circuit Court.*—HON. JAS. R.
VAUGHN, Judge.

AFFIRMED.

*F. S. Heffernan* and *C. W. Thrasher* for appellants.

(1) The court erred in not admitting evidence as
to improvements made by defendant O'Callahan on
the land sued for while in possession of the same, and
after his settlement with Simmons, and payment by
him of the purchase price to Simmons. See cases here-
after cited on the application of the statute of frauds to

the parol contract between Simmons and Headlee. (2) There was sufficient performance of the parol contract on the part of appellant, Thomas O'Callahan, to take the case out of the statute of frauds. *Simmons v. Headlee*, 94 Mo. 482; *Bean v. Valle*, 2 Mo. 102; *Farrar v. Patton*, 20 Mo. 81; *Charpiot v. Sigerson*, 25 Mo. 63; *Tatum v. Brooker*, 51 Mo. 148; *Adair v. Adair*, 78 Mo. 630; *Wetmore v. White*, 2 Caine's Cases, 109; *Ryan v. Dox*, 34 N. Y. 307; *Throckmorton v. Davidson*, 68 Iowa, 643. If the vendee is in possession of the premises at the time of the sale, and so continues thereafter with consent of the vendor, that is part performance of the contract. *Fisher v. Moolick*, 13 Wis. 321; *Snider v. Thrall*, 56 Wis. 674; *Brown v. Jones*, 46 Barb. 400; *Pains v. Coombs*, 1 DeG. & J. 34; *Gregory v. Mighell*, 18 Ves. 328. Where a parol agreement for sale of land is silent as to the possession, the land vacant, the entire consideration paid, and the agreement fully performed on the part of the vendee, leaving nothing for the vendor to do but to give a deed, there is an implied agreement that the vendee may at once take and hold possession. *Miller v. Ball*, 64 N. Y. 286; Waterman on Spec. Perf., sec. 270. The entire performance of this parol contract on the part of the appellant takes it out of operation of the statute of frauds. *Randall v. Turner*, 17 Ohio St. 262; *Towsley v. Moore*, 30 Ohio St. 184, 193; *Lefferson v. Dallas*, 20 Ohio St. 68; *McClure v. Otrich*, 118 Ill. 320; *Walker v. Shackelford*, 49 Ark. 503; *Webb v. Toms*, 86 Mo. 591; *Winters v. Cherry*, 78 Mo. 344; *Wood v. Fleet*, 36 N. Y. 511. (3) Respondent Emmel, claiming title to the land sued for, solely by quitclaim deed from P. T. Simmons, is affected by the equities existing between said Simmons and O'Callahan, and, therefore, stands no better than the other respondents. *Morrow v. Best*, 62 Mo. 491; *Austin v. Loring*, 63 Mo. 19; *Emmel v. Headlee*, decided February 20, 1888, and not reported. (4) The evidence in this case shows that the contract by the defendant

Hayes, to support defendant O'Callahan during his natural life, was a valid contract, founded on a sufficient consideration which had been partly performed by said Hayes before the commencement of this suit. And the court below committed error in setting aside the mortgage given to secure the notes from O'Callahan to Hayes for want of consideration. *Sharkey v. McDermott*, 91 Mo. 647 ; *Muenks v. Bunch*, 90 Mo. 500 ; *Franklin v. Tuckerman*, 27 N. W. Rep. ( Iowa ) 759 ; *Gupton v. Gupton*, 47 Mo. 37, 46 ; *Halsa v. Halsa*, 8 Mo. 303.

*Goode & Cravens* for respondents.

(1) If the deposition of Mr. O'Day is taken as true it establishes a verbal agreement on the part of Simmons to convey the land in controversy to the defendant O'Callahan, of which there was no such part performance as will take it out of the statute of frauds.  O'Callahan was in possession for years before the verbal contract with Simmons is alleged to have been made, and possession, to amount to part performance, must be taken under and pursuant to the contract. *Bean v. Valle*, 2 Mo. 102–135 ; *Parke v. Leewright*, 20 Mo. 85 ; *Charpiot v. Sigerson*, 25 Mo. 63 ; *Wiley v. Robert*, 31 Mo. 212 ; *Ells v. Railroad*, 51 Mo. 200 ; *Spalding v. Conzelman*, 30 Mo. 177 ; *Bowles v. Wathan*, 54 Mo. 261 ; *Sitton v. Shipp*, 65 Mo. 297.  Payment of purchase money is not part performance. *Galway v. Shields*, 66 Mo. 313 ; *Lydick v. Holland*, 83 Mo. 703 ; *Barnes v. Railroad*, 130 Mass. 388.  Acts done prior to the making of an agreement cannot be a part performance of it.  Pomeroy on Spec. Perf., sec. 110 ; *Eckert v. Eckert*, 3 Penr. & M. 332 ; *Dongan v. Blocher*, 24 Pa. St. 28.  If they are merely introductory, preparatory or auxiliary to the agreement they are inoperative.  *Earl of Glengal v. Barnard*, 1 Keen, 769 ; *Cooth v. Jackson*, 6 Ves. 12 ; *Clerk v. Wright*, Atk. 12 ; *Colgrove v. Solomon*, 34 Mich. 492.  Possession to be

part performance must have been notoriously delivered, or taken in pursuance of the contract alleged. *Moore v. Small*, 19 Pa. St. 461 ; *Charpiot v. Sigerson*, 25 Mo. 63 ; *Gregory v. Mighell*, 18 Ves. 328 ; *Wood v. Thornly*, 58 Ill. 464 ; *Judy v. Gilbert*, 77 Ind. 96 ; *Mahana v. Blunt*, 20 Iowa, 142 ; *Ham v. Goodrich*, 33 N. H. 32. It must be unequivocally in execution of the agreement. *Wallace v. Rappleye*, 103 Ill. 229 ; *Morgan v. Bergen*, 3 Neb. 209 ; *Wright v. Puckett*, 22 Gratt. 370.   Contin-uance of possession does not constitute performance. Pomeroy on Specif. Perf., pp. 154, 155 ; Bigelow on Fraud, p. 386 ; Sugden on Vendors [ 14 Am. Ed.] sec. 152 ; Bispham's Prin. of Eq., sec. 385 ; *German v. Machin*, 6 Paige, 289 ; *Jones v. Peterman*, 3 Serg. & R. 543 ; *Wilmer v. Farris*, 40 Iowa, 309 ; *Pickerell v. Morris*, 97 Ill. 220.   The acts must be such as appear to the court would not have been done except on account of the agreement.   Browne, Stat. Frauds, sec. 454.   They must show some contract between the par-ties, and parol evidence may then show the details of it. Browne, Stat. Frauds, sec. 455.   They must unequivoc-ally refer to the agreement.   Browne, Stat. Frauds, sec. 456.   The important characteristic of an act of part per-formance is that it shows of itself an agreement of some sort concluded between the parties.   Browne, Stat. Frauds, sec. 457.   Possession to be part performance must be notorious, and must have been delivered in pursuance of the alleged contract.   Browne, Stat. Frauds, secs. 472, 473, 476.   Must be in pursuance of the contract.   Browne, Stat. Frauds, sec. 476.   Tenant merely continuing possession after contract for new term is no evidence of it.   The same reasoning applies of course where the contract set up is the sale of the estate to the defendant by the owner in fee.   Browne, Stat. Frauds, sec. 477.   The question is *quo animo* it is taken.   Browne, Stat. Frauds, sec. 478.   The decided inclination of the judicial mind is against extending, beyond those limits to which it has been carried by clear

authority, the doctrine of enforcing oral contracts in equity upon the ground of part performance. Browne, Stat. Frauds, sec. 492. (2) Whether or not the deed of trust made by O'Callahan to T. K. O'Day, trustee for James Hayes, was fraudulent depends on whether or not it was executed in good faith for the purpose expressed by it. It is a question of intention, and was found by the court and jury to have been made with a fraudulent purpose. R. S., sec. 2497; *Donovan v. Dunning*, 69 Mo. 436. Conveyance of land pending action to prevent collection of judgment is void. *Rogers v. Evans*, 56 Am. Dec. 537; *Venable v. Bank*, 2 Pet. 107. Had there been no dishonest motive it would have been constructively fraudulent because a secret trust was reserved to the grantor. *Donovan v. Dunning, supra; Lukins v. Aird*, 6 Wall. (U. S.) 78. (3) The evidence of O'Callahan about improvements made by him after the alleged parol purchase from Simmons was properly excluded as Simmons was dead. *Sitton v. Shipp*, 65 Mo. 297; *Ring v. Jamison*, 66 Mo. 424; *Hughes v. Israel*, 73 Mo. 538.

SHERWOOD, J.—An equitable proceeding to remove a cloud upon title caused by a deed of trust alleged to have been fraudulently made and for the recovery of the following described land: West half of northeast quarter, section 36, township 31, range 21, and southeast quarter of northeast quarter, section 36, township 31, range 21, and the undivided one-half tract in northeast quarter of northeast quarter, section 36, township 31, range 21.

The answer was a general denial, etc., with a count for specific performance. The other issues raised by the pleadings will be found hereafter as submitted to, and settled by the verdict of, the jury, to which such issues were sent for determination.

The testimony in this cause in relation to the count for specific performance is in substance the same as it

was in *Simmons v. Headlee*, 94 Mo. 482, which being an
action of ejectment, the equitable claim and defense of
specific performance was set up.   The statement of that
evidence, as copied from that case, is the following :
"John O'Day was introduced as a witness by defend-
ants, and in substance testified that he, in conjunction
with his brother, T. K. O'Day, were the attorneys of
defendant O'Callahan in a replevin suit, in which he
was plaintiff and Landor Sell was defendant; that,
on the trial, a part of the property in controversy was
found to belong to O'Callahan, and a part to Sell, for
which each respectively recovered judgment against the
other, as well as a proportionate part of the costs ; that
execution was issued against the respective parties ;
that, under the execution issued against Sell, his land
was sold at the November term, 1881, of the circuit
court of Greene county, and was purchased by said T. K.
O'Day for $35 ; that, under an execution which issued
on the judgment in Sell's favor against O'Callahan, the
land in question was sold on the third of December,
1881, and said P. T. Simmons became the purchaser for
$25.   The witness further stated that, after these sales
had been made, the firm of John O'Day & Brother,
representing O'Callahan and said Simmons, of the law
firm of Simmons & Hubbard, met for the purpose of
settling matters between O'Callahan and Sell growing
out of these and other judgments ; that in the negotia-
tions he advanced for O'Callahan $500 to pay a judg-
ment against him in favor of Phœbe O'Callahan, also
some money to pay to F. Emmel ; that in the settle-
ment it was agreed that T. K. O'Day should not take a
deed for the land of Sell's which he had bought at said
execution sale, and that said P. T. Simmons should
convey or release to O'Callahan whatever title he might
have acquired to his land under the sheriff's deed, on
the payment of the amount of Sell's judgment against
him, which amount was paid to said Simmons, and said
T. K. O'Day did not take a sheriff's deed to the land

of said Sell which he had bought at the execution sale.
He further testified that the settlement was a final one,
each man to retain his own lands, as if there had been
no sale, that is, Sell and O'Callahan."

The evidence in this case, as in the one referred to,
shows that P. T. Simmons, the ancestor of the minor
plaintiffs for whose benefit this proceeding was insti-
tuted had acquired the title to the property in contro-
versy by reason of a sheriff's sale of the land as that
of Thos. O'Callahan under an execution issued against
him in favor of Landor Sell. A sheriff's deed in pur-
suance of this sale was duly made to said Simmons,
December 3, 1881, and put to record the twenty-seventh
of that month, the judgment of Sell's, under which the
sale occurred, having been assigned to Simmons and
Hubbard.

The issues of fact heretofore mentioned were sub-
mitted by the court to the jury as follows :

*First.* Was O'Callahan indebted to Hayes in the
sum of three thousand dollars ($3,000) when the deed
of trust was executed by O'Callahan to Thos. K.
O'Day for James Hayes?

*Second.* Was said deed of trust executed wholly,
or in part, to deceive and defraud purchasers at execu-
tion sales of said land under judgments against O'Cal-
lahan ?

*Third.* Was the deed of trust in evidence by
Thos. O'Callahan to Thos. K. O'Day, trustee for James
Hayes, and the agreement in evidence executed by
James Hayes to Thos. O'Callahan, during his natural
life, executed in good faith by said parties for the pur-
pose therein stated ?

*Fourth.* Was the defendant O'Callahan threat-
ened with executions at the time of the execution of deed
of trust in evidence ?

*Fifth.* Was it the intention when said deed of
trust was executed of the parties thereto, that said

land should be preserved thereby for the use and benefit of O'Callahan, the grantor?

*Sixth.* Did Thos. O'Callahan or his attorney, during the lifetime of Phillip T. Simmons, make a settlement with said Simmons to pay said Simmons certain sums of money on condition that said Simmons was to release to said O'Callahan the land purchased by said Simmons on execution sales against said O'Callahan?

The jury returned their verdict on said interrogatories, and issues submitted as follows, to-wit:

"We, the jury, find in answer to first interrogatory, No.

"We, the jury, find in answer to second interrogatory, Yes.

"We, the jury, find in answer to third interrogatory, No.

"We, the jury, find in answer to fourth interrogatory, Yes.

"We, the jury, find in answer to fifth interrogatory, Yes.

"We, the jury, find in answer to the sixth interrogatory, Yes."

These findings of fact by the jury were adopted by the court, and resulted in a judgment for the plaintiffs, from which the defendants appeal.

I.   The controlling question in this cause, and the one to which our chief attention will be directed, is whether upon the evidence adduced the defendant O'Callahan was entitled to a decree for specific performance.

The taking possession of a tract of land by a vendee, under a parol contract made by a vendor to convey to him, and with the consent of such vendor, will take the case out of the statute of frauds, and authorize compulsory specific performance *only* where such taking of possession is *pursuant to, and referable solely to, the parol contract.*   Nothing short of this unequivocal act of.

Vol. 102—13

taking possession will suffice. This doctrine is of almost universal prevalence, and announced in cases too numerous for mention or of ready computation. It has obtained in this state since the earliest period of its history down to the present time, as the following cases will show : *Bean v. Valle*, 2 Mo. 126 ; *Parke v. Leewright*, 20 Mo. 85 ; *Charpiot v. Sigerson*, 25 Mo. 63 ; *Wiley v. Robert*, 31 Mo. 212 ; *Ells v. Railroad*, 51 Mo. 200 ; *Spalding v. Conzelman*, 30 Mo. 177 ; *Bowles v. Wathan*, 54 Mo. 261 ; *Sitton v. Shipp*, 65 Mo. 297. And those cases are in accord with all well-considered cases elsewhere. This is abundantly shown by the authorities cited by counsel for plaintiff.

The uniform statement of the text-writers and the reported ruling of adjudged cases is that mere *continuance* of possession does not constitute part performance. There must be a *radical* change in the attitude of the contracting parties towards each other, a change consisting of *acts done;* a *notorious* change which *itself indicates* that *some contract* has been made between the parties, and *then* parol evidence is admissible to show the details of the agreement. Wood's Landl. & Tenant [ 2 Ed. ] 374, and cas. cit.; Browne on Frauds [ 2 Ed. ] secs. 455, 457, 472, 473, 477.

In the last section cited, the learned author says : " It is abundantly settled, that, if one who is already in possession of land as tenant verbally contract with the owner for a new term, his merely continuing in possession after the making of the alleged contract is not an act of part performance within the meaning of the rule, so as to justify a decree for a lease according to the contract. In such a case the continued holding is naturally and properly referable to the old tenancy, and does not necessarily imply any new agreement between the parties. The same reasoning applies, of course, where the contract set up is the sale of the estate to the defendant by the owner of the fee."

Pomeroy says : "A plaintiff cannot, in the face of the statute, prove a verbal contract by parol evidence, and then show that it has been partly performed. This course of proceeding would he a virtual repeal of the statute. He must first prove acts done by himself or on his behalf, which point unmistakably to a contract between himself and the defendant, which cannot, in the ordinary course of human conduct, be accounted for in any other manner than as having been done in pursuance of a contract, and which would not have been done without an existing contract ; and although these acts of part performance cannot, of themselves, indicate all the terms of the agreement sought to be enforced, they must be consistent with it, and in conformity with its provisions when these shall have been shown by the subsequent parol evidence. It follows from this invariable rule, that acts which do not unmistakably point to a contract existing between the parties or which can be reasonably accounted for in some other manner than as having been done in pursuance of such a contract, do not constitute a part performance sufficient in any case to take it out of the operation of the statute, even though a verbal agreement has actually been made between the parties. * * * For a like reason, the mere possession of the premises by a tenant, continued after the expiration of his term, is not a sufficient part performance of a verbal contract to renew the lease or to convey the land, because such possession may be as reasonably and naturally explained by his holding over as by an agreement to renew or to convey; in other words, it does not unequivocally point to the existence of a contract between the parties, but is referable to another cause. The rule is general in its application and fundamental in principle that acts which are referable to something else than the verbal agreement, and which may be ordinarily otherwise accounted for, do not constitute a sufficient part performance of it." Specific Perf., pp. 154,

155. See also Fry's Specific Perf., sec. 380; Bispham's Principles of Eq., sec. 385; Sugden's Vendors [14 Am. Ed.] sec. 152; *German v. Machin*, 6 Paige (N. Y.) 289.

Speaking of the probative effect of possession, an author already quoted, says: "Merely taking or holding possession is of itself nothing. The question is *quo animo* it is taken or held, and this is not allowed to be answered by parol proof of the agreement between the parties. But, in cases where a tenant continues in possession under an alleged agreement for a new tenancy, it is answered by proof of any act on his own part, done with the privity of the owner of the fee, which is inconsistent with the previous holding, and is such as clearly indicates a change in the relation of the parties. Where the tenant, continuing in possession, makes improvement upon the premises, this fact is of great weight to show a change in the holding. But they must, of course, be of such a marked and important character as to be not naturally reconcilable with the continuance of the old relation." Browne on Frauds, secs. 478 and 480.

Having made these extensive quotations from the authorities, the purpose of making which will be made manifest a little further on, we will now turn our attention to some of the cases cited by defendants as supporting their contention in this cause,—a contention at variance with the views heretofore expressed, as to the necessity of showing something more than a mere retention of possession. The case of *Brown v. Jones*, 46 Barb. 400, was one where a purchaser of land by a parol agreement was in possession at the time, though the land was wild and uncultivated, who thereupon made permanent improvements by clearing and cultivating the same, which clearing and cultivation added fifty per cent. to the value of the land, and he also paid all taxes and assessments, etc., and it was held he was entitled to specific performance, on paying the purchase money.

In *Payne v. Coombs*, 1 DeG. & J. 34, a parol agree-ment was entered into for a lease of a farm, a solicitor was seen by both parties and he was directed to prepare a rough draft for a lease which he did and forwarded it to the lessor, who, without objecting to it, let the ten-ant into possession and directed the solicitor to prepare a lease in conformity to the draft ; and upon this it was ruled that the delivery and taking of possession was a sufficient part performance of the agreement, as expressed in the draft, to exclude a defense founded on the statute of frauds, and by consequence to author-ize specific performance.

The case of *Gregory v. Mighell*, 18 Ves. 328, was one where a parol agreement for a lease was made, and the allegation of the answer resisting performance, that possession was taken *without* the defendant's *consent*, was thought by Sir Wm. GRANT, M. R., to be disproved by two witnesses, as well as by the very significant and pregnant fact that the defendant allowed the plaintiff to maintain the possession as tenant, making expendi-tures for *eight years* before he brought ejectment, and, therefore, that eminent Master of the Rolls held that the defendant was not at liberty to say that it was a possession without consent, and that plaintiff was a trespasser, and, so, specific performance was decreed.

In *Fisher v. Moolick*, 13 Wis. 321, Moolick was a pre-emptor of a piece of public land, and, while in pos-session of it, applied to Fisher for a loan of money to enable him to enter the land within the year. The arrangement was effected whereby Fisher entered the land, took the receiver's receipt in his own name, with the parol agreement to convey the land to defendant upon the payment of $50 in one year, with twenty-five per cent. interest. Fisher was willing, after the entry, to confirm the matter by a written contract to that effect, and sent word of that purport to Moolick, to come and get such a contract, but died before executing it. Meanwhile, after the entry, Moolick went on under

the faith of the parol contract, and, with the consent of Fisher, made valuable improvements on the land, and, upon the death of Fisher, paid up the principal and interest to the administrator, taking written receipt containing a memorandum of the description of the land, and the administrator thereupon took the money thus obtained, and paid it over as directed by the probate court. And upon this showing the ejectment of the heirs of Fisher against Moolick was defeated and a decree entered in behalf of the latter. *Miller v. Ball*, 64 N. Y. 286, was one similar in its general circumstances to the one cited from Wisconsin.

In all of these cases cited, it will be observed that there was a *radical* and *marked change* in the circumstances of the party claiming specific performance, a change which plainly indicated that *some kind of a contract* had been made between them. But here, in the case at bar, what have we to indicate any change in the attitude of the parties towards each other? What *acts* were done? None whatever. The only thing pretended to be done was the bare *retention* of the possession of the property, which was in no proper sense *an act at all*.

The case of *Snyder v. Thrall*, 56 Wis. 674, was the case of the sale of a *house as personal property* on which a *chattel mortgage* had been given. There was no question of specific performance in the case, nor could there have been. The head-notes disclose the whole case as follows: "Property in the possession of a bailee may be sold to him, and a good delivery made without being actually taken into the possession of the owner and then returned to the possession of the vendee."

"So, where a house (treated as personal property) was in the possession of the vendee at the time of the sale thereof, and he continued in possession after and under the sale, it is held that there was such a delivery as would take the contract out of the statute of frauds,

although no part of the purchase money was paid, and no note or memorandum of the contract was made in writing."

That case was much relied on in the opinion of this court in *Simmons v. Headlee*, 94 Mo. 482, where it was held that the *bare retention* of the possession by the former owner was sufficient to take the case out of the statute of frauds, and it was there said in support of this view that, to require O'Callahan "to surrender the possession he had, and then take possession under the contract, is *extremely technical.*" That this view is wholly unsupported by authority has been already shown by the extensive quotations and extracts already made for that purpose. And it may be remarked that the necessity for surrendering the possession under the circumstances supposed, and the taking of the possession under the contract, is no more "*technical*" than that required of a tenant when he would dispute the title of his landlord ; for he in order to this must first surrender the possession of the premises in good faith to his landlord, and then he can resume the possession and dispute his landlord's title successfully. 2 Wood on Landl. & Tenant [ 2 Ed.] secs. 498, 499, 500, and notes ; *Littleton v. Clayton*, 77 Ala. 571.

These considerations constrain us to say that we erred in our rulings in *Simmons v. Headlee, supra*, as well as in the similar case of *Emmel v. Headlee*, 7 S. W. Rep. 22. Consequently we will no longer adhere to these rulings.

II.   The conclusions reached by the trial court in adopting the verdict of the jury on the issues of fact submitted to them, we see no reason to disturb.

III.   There was no error in excluding the testimony of the defendant O'Callahan about the alleged improvements made by him after the alleged parol purchase from Simmons, as the latter was dead, and this rendered O'Callahan incompetent as a witness. *Sitton*

*v. Shipp, supra ; Ring v. Jamison,* 66 Mo. 424 ; *Chapman v. Dougherty,* 87 Mo. 617 ; *Meier v. Thieman,* 90 Mo. 433.

IV. Again, it does not appear *in what* the improvements alleged to be made by O'Callahan consisted. If the improvements were such as occur in the ordinary course of husbandry, this would give no additional strength to the case of the defendant. Browne on Frauds, sec. 480.

Controlled by the foregoing reasons we affirm the judgment. All concur but BARCLAY, J., absent.