Phineas ROSENBERG, Plaintiff-Appellant,

v.

GAS SERVICE COMPANY, a Missouri Corporation, Defendant-Respondent.

No. 23640.

Kansas City Court of Appeals.

Missouri.

Dec. 3, 1962.

Joe E. Burris, Kansas City, for appellant.

Douglas Stripp, Clayton R. Smalley, Kansas City, for respondent, Watson, Ess, Marshall & Enggas, Kansas City, of counsel.

DEW, Special Commissioner.

The plaintiff (appellant) sued defendant (respondent) to recover rent in the sum of $2600 alleged to be due and unpaid. The defendant denied the claim and filed a counterclaim for $400 alleged to have been paid as rent to plaintiff through inadvertence and mistake. At the close of plaintiff's evidence the court, on defendant's motion, directed a verdict for defendant on plaintiff's petition. The court thereupon further ordered that such judgment on the petition be deemed final for purposes of appeal. In its statement to counsel, to the jury and for the record, the court then, upon its own motion, announced that it declared a mistrial of the counterclaim and would require a separate trial thereof, and discharged the jury. No objections were made by either party to the order of the separate trial of the counterclaim. Upon the denial of the motion of the plaintiff for a new trial on his petition, he prosecuted this appeal.

The first petition, filed October 14, 1957, was in the conventional form for an action to recover rent under a written lease. It pleaded a lease in writing beginning May 1, 1951, expiring at the end of five years thereafter, namely, April 30, 1956, in which lease the plaintiff reserved a rental rate of $50 per month and, among other provisions, the lease stated: "The lessee is granted an option of an additional five-year term upon the same terms and conditions hereof *at a rental to be fixed at the time said option is exercised, said option to be exercised on or before December 15, 1955*". (Italics supplied). The petition alleged that defendant had refused to pay the agreed rental for the months of January to October, 1956, inclusive, and prayed judgment for $500 therefor.

On May 31, 1961, the plaintiff filed a supplemental petition to recover additional installments of rent, and asked judgment for the rent for the last fifty-two months of the alleged renewal period, a total sum of $2600 with interest on each installment due.

The defendant's answer admitted the lease referred to in plaintiff's petition; challenged the sufficiency of the petition to state a cause of action; admitted refusal to pay the rental installments claimed to be due; declared that the lease had terminated on April 30, 1956; and averred that the petition is based on an alleged lease for an additional term for which there was no agreement in writing signed by the defendant or by any person authorized to sign it, and which is therefore void under the Statute of Frauds, Section 432.010 RSMo 1959, V.A.M.S. The answer attributed plaintiff's damages, if any, to his failure to rerent or to sell the premises in question.

In its counterclaim defendant stated that the lease terminated on April 30, 1956; denied having ever exercised the option for renewal; alleged that through inadvertence

and mistake it sent to plaintiff eight checks, later cashed by him, for $50 each before defendant discovered that the lease had expired, whereby plaintiff had been unjustly enriched and should restore to defendant such remittances in the total sum of $400, for which defendant prayed judgment, with interest and costs.

Plaintiff's reply to the counterclaim denied its sufficiency to state a cause of action; admitted the lease as pleaded; admitted the receipt of the rental checks from defendant since the date of the expiration of the lease; denied that such payments had been made through inadvertence and mistake; averred that the checks were received in good faith as in payment of rent due under the renewal and alleged that defendant is estopped under the circumstances from asserting that the lease was not extended for a period of five years.

The parties have agreed in their briefs that the statement of facts as related in plaintiff's brief (with one exception noted later) is substantially correct, which statement, with deletion of page references to the transcript and exhibit numbers, is as follows:

"Plaintiff was the only witness to testify in the case. Through him came all the evidence offered at the trial in support of his case, except for such facts as were admitted by the Answer.

"By Paragraph 2 of its Amended Answer defendant admits the making of the lease attached to and made a part of plaintiff's petition as Exhibit 'A'. The lease is also in evidence as plaintiff's Exhibit 1. The initial period of the lease was for five (5) years, beginning May 1, 1951, and ending April 30, 1956. That lease contains this clause —'Lessee is granted an option of an additional five (5) year term upon same terms and conditions hereof at a rental to be fixed at the time said option is exercised, said option to be exercised on or before December 15, 1955'.

"Rent upon the lease was paid by defendant's checks. To each check sent plaintiff during the initial five (5) year term there was attached a voucher which recited in pertinent part (1) defendant's name (2) what the check was for i. e. rental of Parking Lot (3) location by legal description of the rental property—which was the property described in the lease plaintiff's Exhibit 1 (4) the period for which the check was to pay rent.

"Sometime before December, 1955, plaintiff talked by telephone with Fred Olney. Fred Olney is the superintendent of defendant's garage at its plant on Gillis Street and is the man with whom plaintiff talked about the lease back in 1951. In the 1955 telephone conversation with Fred Olney, Mr. Olney said 'This is Fred Olney. I talked with you about the lease at the beginning and the time is about to run out and I am the superintendent at the Gillis Plant'. Mr. Olney identified himself to plaintiff as the same person that had talked to plaintiff when the lease was originally made. 'He stated that the lease was getting close to the end of the Five (5) year period and they wanted to talk about the option and wanted to talk about it according to the terms of the lease'. Olney said: 'The lease says that the rent was to be agreed upon. What do you say to that?' After some discussion as to the amount of rent plaintiff said to Olney: 'If you have done all that, let's let the rent stand as it is'. Olney then said: 'All right. We will go ahead and exercise the option then' and plaintiff said: 'All right'. That day or the next plaintiff got another telephone call from someone who said he was in the General Superintendent's office and he said that Mr. Olney had reported to them that he had agreed on the option and at the same rental and asked plaintiff if he wanted a letter. Plaintiff said to him: 'I don't need a letter. The

lease don't call for it. The Gas Company's word is good enough for me. Just send your check and you've got that done'. Plaintiff otherwise identified Fred Olney as the representative of defendant with whom he initially negotiated the lease and the party to whom he talked about it. Following April 30, 1956, the expiration date of the initial lease term, plaintiff received from defendant each month beginning with May, 1956, through January, 1957, a check in the amount of Fifty ($50.00) Dollars to which was attached vouchers reciting that the check was for rent upon the property described in the lease for each respective month. Payment on the January, 1957, check was stopped at defendant's bank.

"Plaintiff during the period when the checks were being sent to him by defendant did not have any arrangement with defendant whereby its checks would be sent to him except for rent upon the property described in the vouchers and in the lease. These checks were accepted by plaintiff and deposited to his bank account.

"After notice that the check in payment of January, 1957, rent had been stopped plaintiff called the defendant's office and talked with a Mr. Post who referred him to the legal department. Thereafter plaintiff received from defendant through the mail two letters from its attorney dated January 31, 1957, stating among other things that defendant had vacated plaintiff's property on April 30, 1956, by removing all its equipment therefrom and posting 'No Trespassing' signs and that no one at the company is known to have renewed said leasehold arrangement for an additional term and otherwise disclaiming any renewal of the lease. At that time Mr. Olney was either incompetent or dead, because counsel for defendant stated at the trial as a ground of objection to a portion of plaintiff's testimony—'Mr. Ol-ney is incompetent as a witness and under the so-called dead-man's statute, it is my understanding of the law that the incompetency of the agent or the death of the agent of a party disqualifies the other party'. Prior to receipt of these letters plaintiff had no notice from defendant that it claimed to have vacated his property. Following receipt of these letters plaintiff went to see the property which he had not done between April 30, 1956, and January 31, 1957. Upon this visit he found the property had a wire fence around it with two entrances. Hung on a chain across one entrance was a sign saying 'Private Property, No Trespassing, Gas Service Company' or words to that effect. There was nothing at that time of any kind on the property except the fence and the signs. Plaintiff received no rent after December 1956. After receipt of the January 31, 1957, letters plaintiff talked to one real estate agent about seeing if he couldn't get a tenant for the property.

"At the close of plaintiff's case defendant made Motion for Directed Verdict asserting four grounds therefor. This motion was granted upon grounds 1 and 4.

"Ground 1 was: 'because under the evidence the Statute of Frauds bars plaintiff's recovery in this case;'

"Ground 4 was: 'because under Section 441.120 the landlord's right to collect rent must be established by contract in writing'.

"Judgment was entered against plaintiff upon the motion from which judgment plaintiff brings this appeal asserting error as hereafter set out".

The defendant adds to the above statement the fact that during the trial the plaintiff admitted that there never was any writing exchanged between the parties concerning the exercise of the option to renew

referred to in the lease. According to the transcript the plaintiff so testified.

The sole point of error assigned by the plaintiff in this appeal is that the court erred in directing a verdict for the defendant on plaintiff's petition at the close of plaintiff's evidence, since, under the law and the evidence, plaintiff made a submissible case for the jury.

Under that heading plaintiff first contends that neither the written lease nor the law requires the option to be exercised in writing; that the method and manner of exercising the option is not a condition of the lease required by the Statute of Frauds to be in writing, but the option may be exercised orally or by conduct of the parties by holding over or by acceptance of rent; that the Statute of Frauds has no application to the case.

It is asserted by the plaintiff that the option clause sets forth the terms of rental, if exercised; does not direct how the option may be exercised, orally or by writing; that the option was factually exercised as provided by the lease and in a manner agreeable to the parties; that payment of the rent was continued and accepted into the renewal period, and defendant remained in possession of and in control of the premises during that time. Plaintiff insists that the defendant is estopped under such circumstances to deny that the option was exercised.

The parts of the Statute of Frauds pleaded by defendant or referred to by the court in its rulings, and discussed by the parties in their briefs are:

"Sec. 432.010. No action shall be brought * * * to charge any person upon any contract made for the sale of any lands * * * or any lease thereof for a longer time than one year, * * * unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some

other person by him lawfully authorized * * *".

"Sec. 432.050. All leases * * * of lands * * * by parol, * * *, and not put in writing and signed by the parties so making or creating the same, or their agents lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force".

It is urged by the plaintiff that the lease itself is sufficient evidence in writing of the right to renew and of the exercise of the option to meet the requirements of the Statute of Frauds, it being in and of itself a written memorandum thereof; that the option clause omits only the exact dollars and cents to be agreed upon when the option is exercised. Plaintiff maintains that under such terms the law would imply that the rental rate for the renewal period would be "the fair rental market value" of the tenancy of the property at the time the option was exercised; that the oral agreement fixing the rental rate for an extension under the option was not an essential part of the contract, but serves only to relieve the contract of "a superficial uncertainty" and as an assistance in a court action to determine the fair rental market value of the renewal.

Lastly, the plaintiff takes issue with the court in also applying to plaintiff's case Section 441.120(1). That part of that section referred to reads as follows:

"In all cases where a tenant holds over after the termination of the time for which the premises were let or leased, under a written contract between the lessor or his agent and the tenant or his agent, *in any suit for possession* by the party entitled to possession of said premises against such tenant, after the termination of the time for which said premises were let or leased under written contract, oral evidence shall not be admissible that:

said lease or letting was renewed or extended, or that a new contract was entered into or substituted for the written contract, but the tenant's right to continued possession or the landlord's right to collect rent on said premises after the termination thereof shall be established by contract in writing; provided, however, this section shall not prevent a recovery of damages by either party for breach of the written contract". (Italics supplied).

■ Plaintiff points out that since the plaintiff's case is not "for possession" of the premises involved, but only one to recover rental, and since the lease does provide for an extension, making the holding over a privilege granted under the renewal clause of the written lease, the section last quoted is not applicable. With the first reason assigned for this contention we agree. The expressed application of the section is limited to "actions for possession" of real property, and no other application is designated. The present action for rent only is not subject to Section 441.120(1).

Defendant contends that the court properly directed a verdict in its favor on plaintiff's petition because plaintiff's own testimony showed his recovery to be barred by the above Sections 432.010 and 432.050 of the Statute of Frauds. Its argument is that the amount of rent to be charged for a renewal period of the lease was an essential part of the option clause, which the Statute of Frauds required to be in writing; that the omission of the amount of the rent to be paid in event of renewal could not be supplied by any implication that "a reasonable rate" was intended.

To avoid confusion by considering option clauses involved in other cases, cited to support the theories advanced in this case, but differing in language and effect from the one before us, it is necessary to keep in mind the exact language used in the particular lease in the present case. As we construe the language used in the option clause at hand, the parties agreed that, if exercised on or before December 15, 1955, the defendant would have the option to continue as tenant under the same terms and conditions of the lease for five additional years, provided that defendant pay to plaintiff for and during such extended period a rate of rental to be mutually fixed and determined by the parties at the time of the exercise of the option.

It would seem a reasonable construction that the reservation by the lessor of a right to negotiate the rental rate for his property in event of an additional five-year extension of the lease would be as much of a component part of the contract as the reference to "the same terms and conditions". It would also appear natural and logical that neither party desired nor intended to make an agreement in 1951 that would bind them to the rental rate for the original lease period and for five years thereafter. But the fact alone that the defendant did, after the termination of the original lease, remain in possession of the premises for eight months and paid plaintiff therefor at the same rate as previously under the lease, would not exclude the option clause from the Statute of Frauds, nor prove the exercise of that option for a five-year extension.

Concerning the effect of Sections 432.010 and 432.050 of the Statute of Frauds, relied on by the defendant, upon the option clause in this case, cases cited by plaintiff are not in point wherein the option clauses involved expressly provided for a renewal upon the same terms and conditions without exception, or contained no express provisions as to terms and conditions of renewal, or stipulated a determination of the renewal rate otherwise than by the parties and by which the parties agreed to be bound.

Plaintiff cites Insurance and Law Building Co. v. National Bank of Missouri, 71 Mo. 58. In that case a three-year lease required double rent in event of a holding over, but gave lessee an unqualified option

to renew for ten years. Lessee did not request renewal at the expiration of the lease, but remained in the premises for six years, paying the same rate of rental. It then gave notice of termination of the tenancy. The court ruled that the contract contained all of the terms of renewal, that lessee had fully performed all such conditions to date and was estopped to deny its execution of the renewal option. The Statute of Frauds was not considered in the case.

In Blanchon v. Kellerstrass Distilling Corporation, 200 Mo.App. 610, 208 S.W. 484, a lease for one year contained an option for an extension for an additional year upon a sixty-day written notice by the lessee. No provision was made for any change of terms if the option were exercised. The lessee held over and continued to pay the rent but failed to give the written notice mentioned. This court ruled that the mere requirement of notice was for the benefit of the lessor and could be, and was, under the conditions shown, waived by him.

In Snowden v. Dawdy, Mo.App., 343 S. W.2d 197, the option clause made no mention of any change in terms or conditions in event of exercise, and thus the written lease constituted the entire agreement between the parties.

In Arnot et al. v. Alexander, 44 Mo. 25, also cited by plaintiff, the amount of rent to be charged and paid in event of the exercise of an option to renew, was "as much as any other responsible party will agree to pay." It was held in that case that the contract provided for third parties to determine the rent to be charged upon renewal, to which determination both parties agreed to be bound. The Statute of Frauds was not considered in the case.

■■■ The principles involved in the case at bar are succinctly stated as follows:

"A lease which, in connection with the privilege of an additional term, provides for the adjustment of the rent for

such term, is deemed to require a further agreement which, being a component part of the lease, must be in writing." 37 C.J.S. Frauds, Statute of § 114, p. 606.

"Although a promise may be sufficiently definite when it contains an option given to the promisor or promisee, yet if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the very terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such promise. On this ground clauses in leases containing renewal covenants leaving the renewal rental for the future agreement of the parties are in general held unenforceable for indefiniteness and uncertainty". 1 Williston on Contracts 149–151, 3rd Ed. 1957.

"A provision for extension or renewal of a lease must specify the terms and conditions of the renewal or extension with such definiteness and certainty that the court may determine what has been agreed on, and if it falls short of this requirement it is not enforceable. It must be certain and definite both as to the time the lease is to extend and the rent to be paid". 51 C.J.S. Landlord and Tenant § 56, pp. 596–597.

■■■ To satisfy the Statute of Frauds, all the elements of the agreement must be contained in the written contract. Kelly v. Thuey, 143 Mo. 422, 45 S.W. 300, 303; Grismore on Contracts, Sec. 269, page 474; Ver Steeg v. M. Longo Trust Co., 158 Mo. App. 126, 138 S.W. 901; Johnson v. Reading, 36 Mo.App. 306. Those elements are "First, the parties; Second, the subject matter; Third, the consideration". Wheeler v. Blanton, Mo.App., 253 S.W.2d 497, 499.

One of the precedents relied on by the trial court and by the defendant is State ex

rel. Johnson v. Blair, 351 Mo. 1072, 174 S.W.2d 851. In that case the option clause in a five-year lease provided for the lessee's right to lease the described property at the expiration of the lease, for another term "provided that first parties, their heirs or assigns, and second party can agree on rental terms; and if said parties do not agree, the second party agrees to vacate said described property at the expiration of this lease * * *". A notice was given by the lessor several months prior to the expiration of the lease, authorizing a renewal at $125 per month, and requesting vacation of the property at the expiration of the lease if the suggested rental rate be unsatisfactory. No immediate reply was forthcoming from the lessee, but later he made a counterproposition which was not accepted by the lessor. About a month before expiration of the lease the lessor sold the property, subject to the lease. Shortly thereafter the buyer gave lessee written notice to vacate on the date the lease expired. Thereafter, three days before expiration of the lease, the lessee gave written notice of acceptance of the option at the rate of $125 per month. The new owner refused to accept the rent and brought action in ejectment. The supreme court, affirming the judgment of the circuit court in favor of the plaintiff, had this to say relative to the application of the Statute of Frauds to the case, 174 S.W.2d at page 854: "It is apparent that the original lease did not constitute a contract for renewal, nor grant an option to renew for a further term. No terms for renewal were agreed upon. All terms were subject to future negotiation. No method was provided for the determination of terms. The provision for renewal, if the parties could 'agree on rental terms,' was void under the statute of frauds".

Crane v. Berman, Mo.App., 297 S.W. 423, cited with approval by the supreme court in State ex rel. Johnson v. Blair, supra, and cited by the court and by the defendant in the instant case, was an action for unlawful detainer. A five-year lease contained the following option: "It is further agreed that at the expiration of this lease said second party shall have the right and option to rent said building for a further term of five years upon such terms as may be agreed upon between the parties hereto at or before the expiration of this lease". The lessee held over for three years, paying the same rent as he did under the original lease. The lessor, considering the tenancy then on a month to month basis, gave the lessee notice to quit the premises. The lessee, considering he had exercised the renewal option, refused to vacate. Lessee relied on an oral conversation which he claimed to have had with the lessor regarding a five-year renewal, wherein he said the lessor told him to "[l]et it go ahead as it is on the same rental of $175 per month" to which the lessee replied "All right". The court ruled that the lease did not contain all of the terms on which the extended occupancy was to continue under the option; that oral testimony was not admissible to supply any part of it, and therefore the option provisions were void under the Statute of Frauds. The court said at page 424: "If this provision had had inserted in it the words, 'upon the same terms as in this lease provided,' instead of the words, 'upon such terms as may be agreed upon between the parties hereto at or before the expiration of this lease,' we should hold it sufficient".

▇ An omission of the consideration or price of a contract is fatal under the Statute of Frauds. Such element is a constituent part of a lease. Glasgow Milling Co. v. Burgher, 122 Mo.App. 14, 97 S.W. 950; Hain v. Burton, 118 Mo.App. 577, 94 S.W. 589; Ringer v. Holtzclaw, 112 Mo. 519, 20 S.W. 800.

▇ But plaintiff further contends that defendant's continued occupancy of the premises for several months after the expiration of the lease, his monthly remittances for rent during that period and plaintiff's acceptance and retention of such payments, constituted an exercise of the option by the

conduct of the parties, referable only to the terms of the written lease, bound both parties to the extended term and that the provisions of the Statute of Frauds do not apply. In the consideration of the Statute of Frauds such a plea is referred to as "part performance". The law zealously limits and defines the theory of part performance when it involves the Statute of Frauds. Otherwise, the laudable purposes and functions of those statutes might fail of accomplishment.

In the much cited case of Emmel v. Hayes, 102 Mo. 186, 14 S.W. 209, 11 L.R.A. 323, the supreme court said respecting the principle of part performance in connection with the application of the Statute of Frauds, page 210: "The uniform statement of the text-writers, and reported rulings of adjudged cases, is that mere continuation of possession does not·constitute part performance. There must be a radical change in the attitude of the contracting parties towards each other; a change consisting of acts done; a notorious change, which itself indicates that some contract has been made between the parties; and then parol evidence is admissible to show the details of the agreement. * * * 'It is abundantly settled that if one who is already in possession of land as tenant verbally contract with the owner for a new term, his merely continuing in possession after the making of the alleged contract is not an act of part performance, within the meaning of the rule, so as to justify a decree for a lease according to the contract. In such a case the continued holding is naturally and properly referable to the old tenancy, and does not necessarily imply any new agreement between the parties. * * * For a like reason the mere possession of the premises by a tenant continued after the expiration of his term is not a sufficient part performance of a verbal contract to renew the lease * * * because such possession may be as reasonably and naturally explained by his holding over as·by an agreement to renew or to convey. In other words, it does not unequivocally point to the existence of a contract between the parties, but is preferable to another cause. The rule is general in its application, and fundamental in principle, that acts which are referable to something else than the verbal agreement, and which may be ordinarily otherwise accounted for, do not constitute a sufficient part performance of it. * * *'"

The above case of Emmel v. Hayes, has been cited and approved by many later cases in Missouri, including Willey v. Talkington, Mo., 312 S.W.2d 77. In the early case of Spalding v. Conzelman, 30 Mo. 177, the supreme court recognized the same principles. In that case there were both a continued holding by the tenant and payment of additional rent. The court said, page 182: "The mere taking or holding possession is unimportant * * *. So also the mere payment of additional rent, where an agreement for a new lease is set up, is a circumstance of little importance, inasmuch as it may be referred to a holding from year to year after the expiration of the old lease, or to other inducements to its payment".

In the instant case the question, therefore, is whether the defendant's continued possession and remittance of several monthly checks for rent accepted and retained by the defendant, would be as reasonably referable to a month to a month tenancy arising out of a mere holding over and payment of rent for same, as to the renewal option provided in the lease. The plaintiff insists that such conduct of the parties is proper and sufficient proof of a renewal of the lease for another five years at the original rental rate and that the Statute of Frauds does not apply. The defendant firmly maintains that such conduct of the parties constitutes nothing more than a holding over by the defendant for a few months on a month to month basis, and that such proof is insufficient to establish an exercise of the option under the provisions of the Statute of Frauds.

The weight of authority confirms the view that plaintiff's evidence was insufficient under the Statute of Frauds and that

the judgment of the trial court was correct and should be affirmed. The Special Commissioner so recommends.

The foregoing opinion of DEW, Special Commissioner, is adopted as the opinion of the Court. The judgment is affirmed.

All concur.