PUBLICKER INDUSTRIES, INC. and
Continental Distilling Corporation,
Appellants,

v.

ROMAN CERAMICS CORPORATION.

No. 78–2400.

United States Court of Appeals,
Third Circuit.

Argued June 4, 1979.

Decided Aug. 8, 1979.

Harold Cramer, Anthony E. Creato (argued), Jeffrey Cooper, Mesirov, Gelman, Jaffee, Cramer & Jamieson, Philadelphia, Pa., for appellants.

Meyer J. Myer (argued), Chicago, Ill., David H. H. Felix, Philadelphia, Pa., Myer New Berlin & Braude, Chicago, Ill., for appellee.

Before ADAMS and ROSENN, Circuit Judges, and LAYTON, District Judge.*

## OPINION OF THE COURT

ROSENN, Circuit Judge.

In contemplation of the American Bicentennial celebration, Publicker Industries, Inc. ("Publicker") conceived of the idea of putting four-fifths of a quart of whiskey in miniature ceramic replicas of the Liberty Bell and retailing the "patriotic product" for $19.99 each. Continental Distilling Corp. ("Continental"), Publicker's wholly-owned subsidiary, became involved in the implementation of this idea, and Roman Ceramics Corporation ("Roman") agreed to supply the uniquely-shaped containers at prices ranging between $6.35 and $6.55 per bottle. A snag in the plan developed when Roman discovered a similarity between 40,-000 of the bottles it had manufactured and the original design it was copying: each of the bottles, like the Liberty Bell itself, had a crack in its side rendering it unsuitable to hold liquor. Unsuccessful efforts to find a suitable disposition of these defective bottles led to a suit by Publicker and Continental against Roman in the United States District Court for the Eastern District of Pennsylvania. The district court entered judgment in favor of Roman, and Publicker and Continental appealed. Because the district court did not make certain critical findings, we will vacate the judgment and remand the case for further proceedings.

Although the design for the bottles was originally drawn in 1975 by Publicker and Roman, the actual purchase orders came from Continental. Roman had been manufacturing the bottles and billing Continental for several months when the problem arose. Roman discovered and advised Continental in January 1976 that 40,000 bottles were defective and unusable as whiskey containers. Letters were exchanged, the effect of which culminated in a dispute. Roman contended that Continental agreed to purchase the defective bottles at $2.50 each, and Continental claimed no agreement had been reached. In May, Continental suggested that Roman dispose of the bottles elsewhere, but Roman responded that there was a firm contract and billed Continental for $100,000. The bottles remained undelivered and in Roman's possession.

In August 1976, Roman began direct negotiations with Publicker concerning the disposition of the bottles. A new agreement was reached in September 1976, under which Publicker agreed to purchase the 40,-000 defective bottles at $1.00 each and to purchase 12,000 new bottles at $6.55 each. Publicker paid Roman $40,000, but subsequently learned that approximately 1200 of the defective bottles had been sold by Roman to an outside party. Publicker viewed this as a breach of its contract with Roman justifying rescission and demanded that the $40,000 be returned. Roman refused. Thereupon, Publicker and Continental sought a judgment in this proceeding in the amount of $40,000 and a declaration that the contract to purchase 12,000 additional bottles had been rescinded.

Roman, incorporated in Delaware with its principal place of business in Illinois, moved to dismiss the suit because of lack of diversity between it and Continental. Continental has its principal place of business in Pennsylvania but is incorporated in Delaware. (Publicker is incorporated and has its principal place of business in Pennsylvania.) The district court dismissed the motion without prejudice for failure to comply

---

* Honorable Caleb R. Layton, 3rd United States District Judge for the District of Delaware, sitting by designation.

with the local rule concerning notice.[1] Rather than renew the motion, Roman chose to file an answer and counterclaim. In its answer, Roman again controverted the jurisdictional allegation, made in plaintiffs' complaint, that Roman was incorporated in Illinois, and stated that it was incorporated in Delaware. The counterclaim averred that the plaintiffs' original contract to purchase the bottles at $2.50 each was still valid, and that an invoice in the amount of $9,864.30 for bottles previously shipped remained unpaid. (The unpaid invoice is not in issue on this appeal.) After reduction for the $40,000 already paid, the counterclaim sought damages of $69,864.30 plus interest.

The district judge, following a bench trial, entered judgment for the defendant against both plaintiffs on the original claim and the counterclaim. In so doing, he made the following findings:

1) The September 1976 contract had been rescinded and the parties were relieved from any obligations under it.

2) The January 1976 contract was still binding on the parties.

3) Roman did not breach the January contract by selling approximately 1200 bottles to outside parties.

4) The plaintiff corporations acted as "alter egos for each other" and could be treated interchangeably, "as one in the same."

5) Plaintiffs were obligated to pay the price set forth in the January contract of $100,000, less $40,000 already paid, and less $3,259 received by Roman for the 1200 bottles, together with certain other adjustments.

Thus, the court entered judgment for the defendant and against both plaintiffs in the amount of $73,047.17.

Plaintiffs then filed a motion to vacate the judgment or in the alternative to amend it, alleging in part that the lack of complete diversity required the court to dismiss the action. The trial judge vacated the judgment, dismissed Continental from the suit in all respects, and reentered the judgment in full in favor of Roman against Publicker.

Publicker and Continental filed this appeal, contending that the district court erred: 1) in failing to dismiss the suit entirely for want of complete diversity; 2) in treating Continental and Publicker as alter egos, thereby imposing liability on Publicker for the January contract; 3) in not holding that the September contract was a novation which extinguished all rights and obligations under the January agreement; 4) in not holding that Roman's sale of 1200 bottles to outside parties permitted Publicker to rescind the contracts; and 5) in calculating damages.[2] We affirm the court's decision as to 1), 3) and 4) and reverse and remand for further proceedings on issues 2) and 5).

It is undisputed that the district court acted properly in dismissing Continental as a party. The court's authority stems from Fed.R.Civ.P. 21 which provides: "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Continental was a nondiverse party and could not have remained in the lawsuit. *See Owen Equipment & Erection Co. v. Kroger*, 437

1. The district court could have *sua sponte* dismissed the suit or discharged Continental as a party. *Ray v. Bird & Son Asset Realization Co.*, 519 F.2d 1081, 1082 (5th Cir. 1975); Fed.R. Civ.P. 21. Its failure to do so is especially puzzling given that,

It is . . . well established that when jurisdiction depends upon diverse citizenship the absence of sufficient averments or of facts in the record showing such required diversity of citizenship is fatal and cannot be overlooked by the court, even if the parties

fail to call attention to the defect, or consent that it may be waived.
*Thomas v. Board of Trustees*, 195 U.S. 207, 211, 25 S.Ct. 24, 25, 49 L.Ed. 160 (1904). *See also Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1256 (3d Cir. 1977).

2. Continental has not challenged its dismissal from this action on appeal. The joint brief filed with Publicker raises issues relevant only to the judgment against Publicker. We see no reason for Continental's participation in this appeal.

U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

■■ Publicker contends, however, that a dismissal of Continental required a dismissal of the entire suit. It argues that if complete diversity is lacking, then the court has absolutely no jurisdiction over the action. We see this view of the district court's power under Fed.R.Civ.P. 21 as too restrictive. The court may dismiss a nondiverse party in order to achieve diversity even after judgment has been entered. See *Finn v. American Fire & Casualty Co.*, 207 F.2d 113 (5th Cir. 1953), *cert. denied,* 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1069 (1954); *Wolgin v. Atlas United Financial Corp.*, 397 F.Supp. 1003 (E.D.Pa.1975), *aff'd without opinion,* 530 F.2d 966 (3d Cir. 1976). And although the district court is precluded from retaining diversity jurisdiction by dismissing a nondiverse party if that party is indispensable under Fed.R.Civ.P. 19, it has not been contended that Continental is an indispensable party with respect to the claims between Roman and Publicker.

Publicker argues next that it was improper for the district court to treat Continental and Publicker as "alter egos for each other" and "as one in the same," and thereby to impose liability on Publicker based on the January agreement between Continental and Roman. According to Publicker, there is insufficient evidence in the record to support the district court's application of the alter ego theory to pierce the separate corporate entities of Publicker and Continental. In addition, Publicker argues that the district court's decision to treat Publicker and Continental interchangeably for purposes of contractual liability is inconsistent with, and contradicted by, the court's dismissal of Continental from the lawsuit—which was necessarily predicated on the ground that Continental is a separate, dispensable party—in order to preserve diversity jurisdiction.

In delivering his oral opinion, the district judge made the following statement concerning Publicker's liability for the January contract:

I will note for the record that thus far I have spoken of the plaintiffs interchangeably, and I did that deliberately. I rule that on the present record there is no basis for distinguishing between the two. There is nothing in the record to show that they are indeed separate entities, that they are not alter egos for each other. Because of the way they worked interchangeably throughout this transaction, I treat them as one in the same; and the finding on the counterclaim is against both plaintiffs.

■ Although it is not readily apparent what legal principles were relied upon by the district court in reaching its conclusion that the plaintiffs may be treated interchangeably, the foregoing statement suggests that the court may have disregarded Continental's separate corporate existence by the application of the alter ego theory to pierce the corporate veil. This tool of equity is appropriately utilized "when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime." *Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967), *cert. denied,* 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968); *accord, Chengelis v. Cenco Instruments Corp.*, 386 F.Supp. 862 (W.D.Pa.), *aff'd without opinion,* 523 F.2d 1050 (3d Cir. 1975). The burden of proof on this issue rests with the party attempting to negate the existence of a separate entity. *United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774 (9th Cir. 1977).

■ The trial court made no findings that the circumstances normally required for application of the alter ego theory were present here. Apparently recognizing the lack of such evidence, Roman has not attempted to support this theory on appeal. In the district court, it failed to allege the perpetration of fraud, illegality, or injustice by means of Continental's separate existence.[3] Thus, the district court could not

---

**3.** The denial of a federal court remedy where an adequate one exists in state court would fall far short of an injustice that would permit piercing the corporate veil.

have disregarded Continental's corporate form under the alter ego theory.

Moreover, even were there sufficient evidence to support a determination that Publicker and Continental are to be treated as one and the same, either under the alter ego theory or under some less precise notion that the corporations simply acted interchangeably and in disregard of their corporate separateness,[4] it is not at all evident that that determination could coexist with the trial court's decision to dismiss Continental and thereby preserve diversity jurisdiction. If Publicker and Continental are so intimately related to one another with respect to their dealings with Roman as to justify the imposition of liability on Publicker for Continental's contractual undertaking, then Continental may well be a real party in interest to this suit, and might not fairly be disregarded for purposes of ascertaining whether there is diversity jurisdiction.[5]

■ It is not clear completely, however, whether the district court actually relied on an alter ego theory, or whether instead it invoked the term "alter ego" loosely, for want of a more precise legal concept to convey its impression that the plaintiffs were jointly involved in the transactions leading up to the January contract with Roman and were jointly and severally obligated by it. A legal framework might be provided by the principles of agency, in that it might be concluded that Publicker and Continental created mutual agencies in one another with respect to their dealings with Roman. The underpinnings of this approach are described in Restatement (Second) of Agency § 27 (1958):

> [A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal, which reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.

Under the agency theory, then, it could be argued that Continental, acting both on its own behalf and under apparent authority from Publicker, bound Publicker as well as itself to the January contract with Roman. If established, this determination would permit Roman to sue Publicker alone, since obligors that are jointly liable may be sued independently,[6] thereby obviating a dismissal for lack of complete diversity.

The evidence which indicates that Publicker may have created a reasonable belief in Roman that Continental was acting as agent for Publicker is as follows:

1) Negotiations for the purchase of bottles were initiated in the first instance by Publicker.

2) Design of the bottle was worked out with Publicker.

3) Although the initial order arrived on Continental stationery, it was signed by George Berman, Director of Purchasing for both Publicker and Continental.

4) Additional correspondence came from both Publicker and Continental.

---

4. Cf. *Leach Co. v. General Sani-Can Manufacturing Corp.*, 393 F.2d 183, 186 (7th Cir. 1968) (court disregards separate entities without clearly specifying whether it was relying on alter ego or agency theories, or on fact that parties themselves simply disregarded their separateness).

5. Cf. *Miller & Lux, Inc. v. East Side Canal & Irrigation Co.*, 211 U.S. 293, 29 S.Ct. 111, 53 L.Ed. 189 (1908) (Court determines existence *vel non* of diversity jurisdiction by looking at real party in interest, not at collusively created formal party). On the rare occasions in which courts have been urged to disregard the corporate existence of a wholly owned subsidiary, by application of an alter ego, theory or otherwise, so that diversity jurisdiction may be retained over a case, they have declined to do so, primarily on policy grounds. See *Glenny v. American Metal Climax, Inc.*, 494 F.2d 651, 654–55 (10th Cir. 1974); *Lang v. Colonial Pipeline Co.*, 266 F.Supp. 552, 557–58 (E.D.Pa.) aff'd per curiam 383 F.2d 986 (3d Cir. 1967).

6. See, e. g., *Jett v. Phillips & Associates*, 439 F.2d 987, 990 (10th Cir. 1971). See generally, 7 C. Wright & A. Miller, Federal Practice and Procedure § 1613 (1972).

5) Harold Roman, President of Roman testified that he treated the plaintiff companies as one and the same and that he believed Publicker had purchased the 40,000 bottles.

However, because the district court made no findings under an agency theory and because we cannot discern any other ground upon which the district court's conclusion that the plaintiffs were one and the same for purposes of this suit may be upheld, we are constrained to remand the case to allow the trial judge to make the necessary findings and to explain the legal underpinnings of his determination.

Publicker's third contention is that the court erred in imposing liability under the January contract because all obligations under that agreement were discharged by the September contract. It argues that the new agreement was a novation, which has the effect of extinguishing all rights and duties under a prior contract. *See* Restatement of Contracts § 424 (1932). On the other hand, Roman contends that the September agreement was an accord executory which discharges the earlier contract only after performance by the parties of the new obligations. Although eschewing the use of formal legal terms, the district court apparently agreed with Roman by concluding that, "having reneged on the settlement agreement, plaintiff is bound by the original agreement to purchase the 40,000 defective bottles at $2.50 each."

■ The distinction between these two principles of novation and accord was considered in *In re Kellett Aircraft Corp.*, 173 F.2d 689, 693 (3d Cir. 1949), where this court, quoting from *Wyatt v. New York, O. & W. R. Co.*, 45 F.2d 705, 708 (2d Cir.) *cert. denied*, 283 U.S. 829, 51 S.Ct. 353, 75 L.Ed. 1442 (1930) said:

Ordinarily an executory contract constituting an accord is not a bar to an action upon the original claim; 'satisfaction' that is, full performance of the contract of accord, is also necessary. If the par-

ties so intend, the contract of accord may itself be taken as a satisfaction and discharge of the original claim; but the intention must be clear, and the presumption is otherwise.

To determine whether a contract acts as a novation or an accord executory, intent of the parties is the key:

It is frequently difficult to determine whether a new agreement is a substituted contract operating as an immediate discharge, or is an accord executory the performance of which it is agreed shall operate as a further discharge. It is wholly a question of intention, to be determined by the usual processes of interpretation, implication, and construction.

6 Corbin on Contracts § 1293 at 190 (1962). *See Westinghouse Electric Supply Co. v. Fidelity and Deposit Co.*, 560 F.2d 1109, 1113 (3d Cir. 1977); *Slaughter v. Philadelphia National Bank*, 417 F.2d 21, 27 (3d Cir. 1969).

■ Novation is an affirmative defense and when raised on a counterclaim, as here, the plaintiff has the burden of proving that the parties intended to discharge the earlier contract. *See Jacobson & Co. v. International Environment Corp.*, 427 Pa. 439, 235 A.2d 612, 617 (1967). A review of the events and records concerning the September agreement, however, reveals no evidence of the parties' intention to supplant the January contract. Thus, we conclude that the district court's holding that Publicker's failure to perform the September agreement left the January contract in full force is not clearly erroneous.[7]

■ The fourth issue raised on this appeal is that Roman's sale of 1200 bottles to an outside party was either a material breach of contract or the basis for a claim of misrepresentation, permitting Publicker to rescind the September agreement and entitling it to a return of the $40,000 already paid to Roman.

---

7. Even if the September contract were labeled a novation, the district court would have had the power to enforce the antecedent agreement as a restitutionary remedy. *See* 6 Corbin on Contracts § 1293 at 196.

In dismissing this contention, the district court was willing to assume that Roman had initially agreed to refrain from selling the bottles to outside parties. However, the court noted, on May 7 Continental wrote Roman and stated that "it might be advisable to look into the possibility of your own disposition at this late date, but with the reservation of checking with us first for total agreement as to whether we will take over or not." The trial judge interpreted the letter as follows:

> As far as I am concerned, the inference which is inescapable from this is twofold: No. 1, that the plaintiffs were seeking ways out of any contractual arrangement which they had with the defendant; and No. 2, they certainly did not have any strong objection to the defendant disposing of these bottles if that would reduce the plaintiffs' exposure to any claim for breach of contract.

We do not believe that this finding of fact is clearly erroneous, and the court was therefore correct in concluding that Roman's sale of the bottles did not relieve Publicker from its obligations, if any, under the January agreement.

■ Finally, Publicker challenges the district court's calculation of damages. The district judge's computation was as follows: 40,000 bottles at $2.50 each or $100,000, less the amount of $3,259 received by Roman for the previous sale of 1200 bottles, and $9,864.30 due on an open account, or $106,-605.30. From this sum, he deducted $40,000 previously paid, and added interest from the date of the original judgment for a final judgment in the sum of $74,142.46. Unfortunately, the court did not indicate the legal basis for its damage calculation. Roman claims, however, that the proper authority for the remedy of recovery of the original contract price can be found in U.C.C. § 2–709:

> (1) When the buyer fails to pay the price as it becomes due the seller may recover,

together with any incidental damages under the next section, the price

> (a) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer; and
>
> (b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.

The statute allows an aggrieved seller to recover the contract price in any one of three instances:

> (1) when the goods have been accepted by the buyer, or
>
> (2) when the goods have been lost or damaged within a reasonable time after risk of loss had passed to the buyer, or
>
> (3) when goods have been identified to the contract and the seller is unable to resell them.

■ The first two situations obviously do not apply to this case. The third would be applicable only if Roman was unable to resell the bottles at a reasonable price. But the district court made no finding on this point. The only evidence in the record relating to this issue appears to be a letter to Roman from an outside party dated December 21, 1976, offering to purchase the bottles at $.40 each for a total of $16,000. As the record now stands, we are unable to determine whether or not this would constitute a reasonable price. If $.40 per bottle is not a reasonable price and the court determines that Roman made a reasonable effort to sell the bottles or that such effort would have been unavailing, then, and only then, could Roman recover the January contract price of $2.50 per bottle.[8] Because we are unable to make this determination, we must remand this case to allow the district court to make additional findings on this issue as well.

---

8. If U.C.C. § 2–709 does not apply, then U.C.C. § 2–708(1) probably would. Section 2–708(1) allows recovery for the difference between the market price at the time and place for tender and the unpaid contract price. Additional findings would have to be made by the district court in order to calculate damages under this provision.

In conclusion, the judgment will be vacated and the case remanded to the district court to make findings on whether, in its dealings with Roman, Continental was acting as Publicker's agent and to determine whether Publicker should be held liable under the January contract between Continental and Roman. If the court determines that Publicker is liable, then the necessary findings must be made to support the calculation of damages under the appropriate provision of the Uniform Commercial Code.

Each party shall bear its own costs.