In the Matter of Archie Norman BREWER and Irene Magdalene Brewer d/b/a Maple Land Farms, Debtor.

Archie Norman BREWER and Irene Magdalene Brewer, Plaintiffs,

v.

TIP TOP CREDIT UNION, Defendant.

Bankruptcy No. 84–01752–SW–11.
Adv. No. 86–0193–SW–11.

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

Aug. 8, 1986.

Vacated and Set Aside
Sept. 15, 1986.

Thomas L. Williams, Sylvia Byrnes-Ales, Roberts, Fleischaker & Scott, Joplin, Mo., for plaintiffs.

Joel Pelofsky, Shugart, Thomson & Kilroy, P.C., Kansas City, Mo., Successor Counsel, for plaintiffs.

Bruce Copeland, Daniel E. Scott, Timothy Whelan, Copeland, Scott & Whelan, Joplin, Mo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT THAT PLAINTIFFS HAVE AND RECOVER THE SUM OF $6666.67 FROM DEFENDANT

DENNIS J. STEWART, Chief Judge.

Plaintiffs, the debtors-in-possession in these chapter 11 proceedings, bring this action for the purpose of recovering damages on the basis of the defendant's alleged breach of an agreement which was approved by the court in a prior adversary action. See *Brewer v. Tip Top Credit Union*, Adversary Action No. 85–0268–SW–11 (Bkrtcy.W.D.Mo. Sep. 16, 1985). It is the primary contention of the plaintiff that the court's final judgment in that case does not contain a correct rendition of the oral agreement between the parties insofar as it states that the tenancy agreement between the parties was, after the 1985 harvest, "terminable at will" and that the defendant breached the real agreement between the parties by forcing the debtors to vacate the premises after the 1985 harvest. The merits of the action came on before the court for hearing on July 11, 1986, in Joplin, Missouri, whereupon the plaintiffs appeared personally and by Sylvia Byrnes-Ales, Esquire, their counsel, and the defendant appeared by counsel, Daniel E. Scott, Esquire. The evidence which was then adduced showed that, in the former adversary action, the debtors sought an accounting by Tip Top Credit Union for certain funds which Tip Top had received as preferential or otherwise unlawful transfers; that, by order of August 1, 1985, this court set a hearing of the merits of that adversary action for September 6, 1985, at 2:00 p.m. in Joplin, Missouri; that, at the time thus established for hearing, the debtors did not appear, either personally or by counsel, and only the Tip Top Credit Union then appeared by Bruce A. Copeland, Esquire, its counsel, who related to the court that the parties had reached a compromise and settlement of the action, the substance of which he then related to the court; that the court, therefore, on September 16, 1985, issued its written order approving the compromise and settlement, and stating that the agreement between the parties, as reported by Mr. Copeland, was to the following effect:

"(1) The defendant will, within 7 days of September 6, 1985, return the sum of $5,000, which defendant allegedly wrongfully collected, to plaintiff.

"(2) The debtors and defendant will 'sharecrop' the 200 acres with respect to which the automatic stay was relieved in favor of Tip Top Credit Union in the

confirmed plan of reorganization. Under such 'sharecrop' arrangement, the debtors are to provide all expenses and labor necessary to plant, cultivate, and harvest crops and they will take ⅔ of the crop proceeds while Tip Top will be entitled to ⅓ of the crop proceeds. The sharecrop arrangement will last through the harvesting and sale and division of this year's anticipated crops and thereafter will be terminable at the will of the Tip Top Credit Union.

"(3) The court's prior order of August 14, 1985, confirming the debtor's proposed plan of reorganization will be deemed amended to show that the balance due to the class 7 creditor is $78,503.65 which will be amortized over 20 years at the rate of $1,212.18 per month.

"(4) The within adversary action will be dismissed with prejudice and debtors will release Tip Top with respect to any and all claims or defenses based upon Tip Top's alleged lack of priority or lack of security interest in the milk assignment";

that, in the meantime, Mr. Brewer, on or about September 13, 1986, met with his counsel, Thomas L. Williams, Esquire, and was informed by Mr. Williams that the judgment of the court was about to be issued to the above effect; that Mr. Williams knew at this time that the approved agreement did not include a term certain past the 1985 harvest because, on September 6, 1985, Mr. Copeland had written to Mr. Williams as follows:

"At today's hearing Judge Stewart insisted on making an entry reflecting our settlement agreement. We should be receiving his formal order next week. He decided that the increase of monthly payments to Tip Top as a result of our settlement was sufficiently insignificant to allow him to modify the confirmed plan without notice to all parties. I had a problem explaining to him what I understood to be the term of our sharecropping arrangement. After telling him that I understood the agreement would continue until Tip Top sold the 200 acres, he decided that the arrangement was terminable at the will of Tip Top because there was no agreement between Tip Top

and the Brewers as to a minimum sale price for which Tip Top could sell the 200 acres. As a result, his order will reflectithat the sharecropping agreement is terminable at will";

that Mr. Williams informed Mr. Brewer of the agreement to this effect and Mr. Brewer gave no indication of any desire to appeal from the court's judgment approving the agreement; that Mr. Brewer, in his testimony before this court, contends that this was because Mr. Williams told him that "there was nothing we could do about it"; that Mr. Williams' testimony is to the contrary and to the effect that he did not tell Mr. Brewer that "there was nothing we could do about it"; that he did not recommend appeal because of attempts which then ensued to work out another agreement with Tip Top Credit Union on behalf of the debtors; that it was not possible to work out any such subsequent agreement; that the debtors, nevertheless, in reliance on the provision that the lease continued after the 1985 season, albeit terminable at will, obtained sufficient seed to plant crops which, according to Mr. Brewer's uncontradicted testimony, would have yielded $10,000 in proceeds of the sale of the crops; that these crops were never planted, however, inasmuch as, according to Mr. Brewer's uncontradicted testimony, he went to the field at planting time only to find that Tip Top Credit Union had given over its custody to another farmer, who was in the process of undoing whatever preparations Mr. Brewer had made for planting his crops; that Mr. Brewer, again according to his uncontradicted testimony, had no certain knowledge of the precise terms of the agreement related to the court by Mr. Copeland until he was sent a sheaf of papers by Mr. Williams in March of 1986; and that Mr. Brewer claims never to have received any adequate accounting for Tip Top Credit Union's disposition of the monies which constituted the subject matter of the prior adversary action.

### Conclusions of Law

Formerly, in the hearing of September 6, 1985, in apprising the court of the terms

and nature of the agreement between the Brewers and the Tip Top Credit Union, Mr. Copeland characterized the arrangement between the parties as being in the nature of a "sharecrop" agreement. If so, the arrangement did not have the status of a tenancy at will under the law of Missouri and the Brewers were entitled to no notice by Tip Top Credit Union as a prerequisite to termination of the agreement. See *Busby v. Stimpson*, 542 S.W.2d 551 (Mo.App. 1976); *Brunner v. Gorley*, 227 S.W.2d 81 (Mo.App.1950). Otherwise, if the agreement is one of tenancy at will, although it is, under the law of Missouri, terminable at will, the tenant must nevertheless be granted 30 days' prior written notice to vacate in order lawfully to terminate the lease. See section 441.060 RSMo to the effect that "(a) tenancy at will or by sufferance, or for less than one year, may be terminated by the person entitled to the possession by giving one month's notice, in writing, to the person in possession requiring him to remove." In determining the character of the agreement, the court is not bound by any general descriptive term applied to the agreement by one of the parties, but rather should determine from the agreement whether it was the intent of the parties that the owner of the property intended to give possession of it over to the other party. It is said that the principal distinction between a "tenant" and a "cropper" is that the tenant has a possessory interest in the land, whereas the cultivator has only an incorporeal interest which may be merely a license, or a limited and qualified interest in the land, depending on the terms of the contract, and the cultivator or cropper is not a tenant entitled to statutory notice to quit. *Smith v. McNew*, 381 S.W.2d 369 (Mo.App.1964). According to the declarations made by counsel for the Tip Top Credit Union before the court on September 6, 1985, however, it was contemplated that there be a "term" to the agreement, after which the debtors were to quit the premises. Mr. Copeland used the word "term" in his letter of the same date and it was clear from that letter that the tenancy should last until it was terminable at the

will of the Tip Top Credit Union. And the words, "terminable at will" likewise imply a term, however brief and indefinite, and require this court to find that the debtors were accorded a tenancy at will. Further, the other provisions of the agreement which are quoted at length above from the court's judgment in the prior adversary action clearly demonstrate that it was the intent of the parties that the debtors should have use of and exclusively occupy the premises in question. This is evidenced by the reference to the specific property on which the crops were to be grown, rather than to the crops themselves; by the clear and unmistakable provision that the debtors were to do all the farming on the premises for the "term" of the lease, and, as observed above, by the use of the term of art peculiarly applicable to tenancies at will, "terminable at will." Further, the conduct of the Tip Top Credit Union following the time of the agreement and under its provisions treated the agreement as a lease under which it surrendered possession of the premises to the debtors for the term thereof, for, according to the evidence which has been adduced to this court, Tip Top Credit Union did not assert any right of control over the premises until they intended to terminate the tenancy of the debtors. The evidence thus compels the court to find that the arrangement between the parties was that of a tenancy at will which was unlawfully terminated by the Tip Top Credit Union without the 30 days' written notice required by law.

As a prerequisite to the consideration of whether the bankruptcy court may award damages for this breach of the lease agreement, it is appropriate to consider the issue of whether the bankruptcy court has jurisdiction of an action such as that at bar. For, in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court of the United States clearly held that actions for breach of contract arising under state law could not be determined by a sub-Article-III bankruptcy court. The federal district and appellate

courts have consistently held, however, that actions which arise *both* under state law and federal bankruptcy law are within the ambit of this pared-down bankruptcy court jurisdiction. See, e.g., the principles pointed out and the decisions adverted to in *Matter of Richardson,* 52 B.R. 527, 537 (Bkrtcy.W.D.Mo.1985). And, when the state law creates an interest for the debtor in certain property, there can be little question that the automatic stay applies to protect that interest. See, e.g., *Matter of E.C. Bishop & Son, Inc.,* 32 B.R. 534, 537 (Bkrtcy.W.D.Mo.1983). Accordingly, for the Tip Top Credit Union to have terminated the debtors' estate without notice and without requesting relief from the automatic stay was as much a violation of section 362 of the Bankruptcy Code as of the underlying state law. This is so under the facts of this action even though the debtors, in the confirmed plan of reorganization, purported to grant Tip Top relief from the stay with respect to this property. For the tenancy at will, according to the evidence, was then created according to an agreement of the parties which admittedly was intended to vary the terms of the confirmed plan. And there can be no question of the bankruptcy court's jurisdiction to award *compensatory* damages for violation of the automatic stay. See, e.g., *In re Brooks,* 12 B.R. 283 (Bkrtcy.W.D.Mo.1981). It is true that, before the effective date of our new local rules, June 1, 1986, under which our district court conferred limited *coercive* contempt powers on the local bankruptcy court, this court questioned the power of a bankruptcy court to render judgments sounding in coercive civil contempt. See, e.g., *Matter of Wallace,* 46 B.R. 807 (Bkrtcy.W.D.Mo.1984); *Matter of Richardson, supra.* But the jurisdiction of the bankruptcy court to make an award of compensatory damages for violation of the automatic stay has never been questioned. See section 157(b)(2), Title 28, United States Code, effective July 10, 1984, which grants "core" jurisdiction to the bankruptcy court

over matters involving relief from the automatic stay.

This court has previously observed that the adsorption of state law actions into bankruptcy law is a process which—once found permissible—contains no visible "limiting principle" within the meaning of the plurality opinion in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., supra,* which prevents the Congress from remaking all relevant state actions into federal actions by statute and assigning them all to sub-Article-III courts which may be controllable by the legislative branch of government. See, e.g., *Matter of Richardson, supra,* at 537. But, even if this absence of any limiting principle which the plurality opinion found to be vital and necessary in *Marathon, supra,* should require a court having the attributes of an Article III court to decide this action, then it must be mentioned that the federal district and appellate courts regularly assign such attributes to the bankruptcy court. Needless to say, time restrictions permit the mention of only a few of these attributions in this opinion. But they include a ruling that the bankruptcy courts, like Article III courts and unlike non-Article-III courts, may not issue advisory opinions, *Matter of Hamilton,* Civil Action No. 83–6070–CV–SJ (W.D.Mo. May 14, 1984); see also *Matter of Transport Clearings-Midwest, Inc.,* 41 B.R. 528, 539 (Bkrtcy.W.D.Mo.1984); a ruling that the bankruptcy court, rather than the district court, should initially determine a claim based on agency principles arising under state law, *Matter of Walker,* 726 F.2d 452 (8th Cir.1984); a ruling that the bankruptcy court occupies the position of the initial trial court in the hierarchy of the federal judiciary and, under statutes governing bankruptcy appeals, an appeal from a district court decision to the appellate court cannot be taken unless there was an initial appeal of the same issue from a bankruptcy court decision, *In re Benny,* 791 F.2d 712, 716 (9th Cir.1986); [1] a ruling

---

1. "In summary, we hold that appeals in bankruptcy cases may be taken to this court pursuant to section 158(d) only if the order appealed from is within the scope of section 158(a), a bankruptcy court order appealed to a district court." 791 F.2d at 718.

that the "clearly erroneous" standard of review implies that the bankruptcy court has powers greater than those possessed by pure Article I courts, *In re AOV Industries, Inc.*, 792 F.2d 1140 (D.C.Cir.1986);[2] and a recognition that the applicable statutory scheme of the Bankruptcy Amendments and Federal Judgeship Act of 1984 grants the bankruptcy court the sole power to enjoin state court actions against trustees and other officers of a bankruptcy estate. *Matter of Burstein-Applebee, Inc.*, 63 B.R. 1011 (Bkrtcy.W.D.Mo.1986). The distinction between the types of cases determinable by Article III courts and the bankruptcy courts daily grows more blurry; and consequently, this court may act with some self-assurance that it has jurisdiction of the action at bar.

In granting compensatory damages for violation of the automatic stay, the authorities firmly establish that the bankruptcy court may award damages which compensate for any injury suffered. *In re Brooks, supra,* at 285. The uncontradicted proof offered by the plaintiffs on this subject was that planting of the seed which they had on hand and intended to plant, but for the unlawful expulsion of them from the land, would have, according to the then available prices and average yields, resulted in $10,000 proceeds. This court is mindful that it is incumbent upon a plaintiff seeking damages for breach of contract to demonstrate what expenses he or she would have incurred in performing according to the contract so that a correct quantum of damages can be awarded by subtracting out the expenses which have been avoided by reason of the breach. See, e.g., *Knaus v. Concordia Lumber Co., Inc.*, 47 B.R. 63 (Bkrtcy.W.D.Mo.1985), to the following effect:

"(I)t is the well established duty of a plaintiff suing for damages to offer evidence as to the prospective expenses which would be incurred in performing a contract in order to enable the court to determine whether the making of a profit would be a likelihood. 'One seeking to recover damages for breach of contract must ordinarily establish that he could have realized a profit or benefit on a full performance of the contract. So, where it is obvious that plaintiff would have more than trivial expense in performing his part of the contract and that the profit on the contract would be substantially less than the contract price, the mere introduction of the contract and a showing of its breach does not make out a prima facie case for damages for the unpaid contract price.' 25A O.J.S. *Damages* section 162(11), p. 116 (1966)."

In the action at bar, however, the evidence clearly shows that the debtors already had purchased the seed which they intended to plant and that Mr. Brewer intended to do the work of harvesting and planting so as not to incur the cost of custom work. The unlawful eviction is thus not shown to have saved the debtors any expenses which they would otherwise have incurred. There is nothing in the evidence, although the defendant had ample and explicit opportunity to controvert plaintiffs' evidence on this subject, to show that the $10,000 proceeds of the crops would have been anything but profit. Under the governing terms of the agreement, as quoted above from the court's written judgment of September 16, 1985, one-third of that amount would have gone to the Tip Top Credit Union. Accordingly, the appropriate amount of damages to be awarded to plaintiffs is the sum of $6,666.67.

## II

This court recognizes that the above result is reached on the basis of pleadings which alleged that the breach of contract

---

**2.** "In *Kalaris* (v. *Donovan,* 697 F.2d 376 (D.C.Cir. 1983)), this court determined that an article I administrative board (the Labor Department Review Board) was not operating beyond its constitutional authority because, *inter alia,* the reviewing court provided a level of review more demanding than the 'clearly erroneous' standard ... The court implied that as long as a more exacting level of scrutiny was imposed, the Review Board was not being 'vested' with article III powers ... We hold that the district court's use of the substantial evidence standard satisfies the *Marathon* requirements." 792 F.2d at 1192.

involved was not the one reported by the court in its above quoted judgment of September 16, 1985, but rather of an oral agreement entered into by and between the parties which was not faithfully and accurately reported in the court's judgment of September 16, 1985, in that the parties had actually agreed that the tenancy would last through the year 1986. But a review of the files and records in the former adversary action shows that debtors' counsel had notice of the hearing held in the former adversary action on September 6, 1985; that he did not attend that hearing; and that the court's written judgment of September 16, 1985, is an accurate and faithful rendition of the agreement as reported to the court by Mr. Copeland.[3] Further, the debtors forewent the right to move to alter or amend the judgment of September 16, 1985, or to appeal from it. The judgment of September 16, 1985, must therefore be regarded as correctly embodying the agreement between the parties. And relief on the basis of the plaintiffs' express requests in the complaint cannot, therefore, be granted.

But the issue of whether the reported agreement was violated was nevertheless tried and the court must accordingly grant the relief provided by law on the basis of the issues which were tried. See Rule 15(b) of the Federal Rules of Civil Procedure, made applicable to bankruptcy actions by Rule 7015 of the Rules of Bankruptcy Procedure.

### III

Finally, as has been observed above in this court's findings of fact, Mr. Brewer complains in this action that he never received any kind of accounting from the Tip Top Credit Union as he requested in the prayer for relief in the former adversary action.[4] The question is thereby raised as to whether the former adversary action should be reopened and its issues now determined on their merits. The answer to this question must depend upon whether the agreement between the parties which concluded the former adversary action was intended by them to be an accord only or an accord *and* satisfaction.[5] If it was intended to be the latter, then the debtors may only sue—as they have—on the new agreement. If it was intended to be only an accord, however, the failure of Tip Top Credit Union to perform the agreement may result in reopening the former action and trial of its issues on the merits. The evidence in the action at bar, however, is inconclusive on that issue. And that request for relief should more appropriately be raised in the former adversary action by

---

3. The sound recording of the hearing shows that Mr. Copeland used the words "terminable at will" in initially reporting the agreement to the court and explicitly stated that it was so terminable after the 1985 harvest. He then stated that Tip Top would terminate the agreement when it arranged to sell the property. But there were no conditions on whether and when the property might be sold, to whom, or for how much, and Mr. Copeland imparted to the court that, after the 1985 harvest, that matter was left to the sole discretion of Tip Top Credit Union.

4. Again, in this respect, Mr. Brewer's testimony is not contradicted.

5. "An accord and satisfaction is a form of contract whereby one party agrees to give, and the other party agrees to accept, what is offered in settlement of an outstanding claim. When this contract, or accord, is executed, the claim is satisfied ... In appropriate instances, the acceptance by one party of benefits offered in settlement by the other will give rise to an inference that the differences have been settled

by the proffered agreement.... Again, the resolution whether or not there was the meeting of the minds necessary to create the accord requires the court to examine the circumstances surrounding the putative contract, including the parties' expressions of intent." *Pepper's Steel & Alloys, Inc. v. Lissner Minerals,* 494 F.Supp. 487, 497 (S.D.N.Y.1979). "Ordinarily an executory contract constituting an accord is not a bar to an action upon the original claim; 'satisfaction' that is, full performance of the contract of accord, is also necessary. If the parties so intend, the contract of accord may itself be taken as a satisfaction and discharge of the original claim; but the intention must be clear, and the presumption is otherwise." *In re Kellett Aircraft Corp.,* 173 F.2d 689, 693 (3d Cir.1949); *Publicker Industries v. Roman Ceramics,* 603 F.2d 1065, 1071 (3d Cir.1979). "To determine whether a contract acts as a novation or an accord executory, intent of the parties is the key." *Id.,* 603 F.2d at 1071.

means of a motion for relief from judgment under Rule 60(b), F.R.Civ.P., as made applicable by Rule 9024 of the Rules of Bankruptcy Procedure.

Accordingly, for the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that plaintiffs have and recover .from the defendant the sum of $6,666.67.

## ORDER CANCELLING HEARING PREVIOUSLY SET FOR SEPTEMBER 18, 1986, ON DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT OF AUGUST 8, 1986, AND VACATING AND SETTING ASIDE THAT JUDGMENT AND INSTEAD ENTERING JUDGMENT FOR DEFENDANT

This court formerly, on August 8, 1986, entered its findings of fact, conclusions of law and final judgment awarding the debtor plaintiffs the sum of $6,666.67 from defendant as damages for violation of the automatic stay. Briefly stated, the basis for the award was that the plaintiff debtors had a tenancy at will on the land of the defendant within the meaning of § 441.060 RSMo. which was terminated by the defendant without the one month's notice which is required by that same section.

Within the ensuing ten-day period, the defendant moved to alter or amend the judgment or for a new trial. The court, by means of its written order of August 18, 1986, set a hearing on that motion for September 18, 1986, at 11:00 a.m., in Joplin, Missouri.

Later, however, on August 18, 1986, the plaintiffs moved to alter or amend the same judgment. The basis for the motion is the plaintiffs' assertion that they did not have any lease with the defendant which was terminable at will, but rather had a greater estate which they seek to "reinstate." The words in which the debtors phrase their motion are as follows:

"Comes now debtors and for their motion to alter or amend the judgment of August 8, 1986, state that a premise of the Court's Order is that debtors were fully informed and agreed to the purported settlement memorialized in the Court's Order of September 18, 1985. Debtors deny that they were so informed and deny that they agreed to such a resolution of the complaint.

"Wherefore, debtors move the Court to alter or amend the judgment of August 8, 1986, by striking all findings that debtors agreed to a lease terminable at will and that the Court order the setting aside of the Order of September 18, 1985, and reinstating debtors as lessees and for such other relief as is equitable."

This express disavowal of the existence of any tenancy at will forcibly and absolutely removes any and all basis for the judgment which was formerly issued by the court on August 8, 1986. Unless a tenancy at will existed, there can be no basis for the court's judgment of August 8, 1986. For the assertion of a greater estate is not supported by any evidence or any assertion that the lease between the parties was in writing—as it must be in order for debtors successfully to claim more than a tenancy at will. See § 432.050 RSMo. to the following effect:

"All leases, estates, interests of freehold or term of years, or any uncertain interest of, in, to or out of any messuages, lands, tenements or hereditaments, made or created by livery and seisin only, or by parol, and not put in writing and signed by the parties so making or creating the same, or their agents lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force."

■ There can be no question that the motion of the plaintiffs to alter or amend judgment is unambiguously to the effect that there was no tenancy at will or any tenancy which was terminable at will but rather that the tenancy was one for a definite term of years. It is explicitly and precisely requested that the court alter or amend its judgment so as to strike all findings to the effect that there was any tenancy termina-

ble at will and to alter or amend its judgment so as to effect reinstatement of the plaintiffs on the land. In pertinent part, the suggestions in support of the motion of the plaintiffs state as follows:

"In its Order of August 8, 1986, the Court recited and relied upon his previous Order which declared the debtors' lease with Tip Top to be terminable at will after the 1985 crop season.

"Debtors have never consented to any settlement with Tip Top which permitted the land to revert to the lessor or any terminable lease. Debtors similarly have never agreed to any settlement with Tip Top. Debtors will be filing a Rule 60 motion to set aside the 1985 Order memorializing the purported settlement."

In this crucial respect, the plaintiffs' newly-raised factual contentions agree with those of the defendant. Further, the statements made by counsel in the motion to alter or amend judgment have the character of a formal judicial admission to the effect that there was no tenancy which was terminable at will. "[A]dmissions in the pleadings in the case" constitute "judicial admission[s] ... binding on the party making [them]." Graham, Handbook of Federal Evidence, § 801.26, p. 765 (West 1981).[1] The court, therefore, has no alternative except to strike the findings, as to the plaintiffs request, in the judgment relating to tenancy at will and to a lease terminable at will.

Such a striking of the findings, however, leaves no basis for the judgment of August 8, 1986, for plaintiffs and against defendant as rendered in the sum of $6666.67. Accordingly, it must be vacated, set aside and cancelled.

■ Counsel for plaintiffs, having thus disdained the court's judgment based upon violation of the statutory notice provisions relating to a tenancy at will, requests that the court instead grant relief in the form of an order reinstating the lease which he contends to have been in existence. The facts of this action, however, can justify no other form of relief. It appears to be the contention of the plaintiffs' new counsel that the agreement of the parties was for a definite term of years which would still be in existence at the present time. This has to be the necessary inference drawn from his contention that reinstatement of the contended lease is the appropriate remedy. "A tenant invoking equitable jurisdiction to enjoin a landlord from interfering by summary proceedings with his possession must establish his present right to possession as against the landlord." 51C C.J.S. *Landlord and Tenant* § 320 (1968). The evidence before the court, however, conclusively shows that the lease agreement was not in writing. Because of the applicability of the Statute of Frauds to "leases ... of ... term of years," the oral agreement could have only "the force and effect of leases or estates at will only." Section 432.050 RSMo. The only question of any moment is whether the tenancy at will is one from month-to-month or year-to-year. "The general rule is that where a tenant enters into possession of agricultural land under an oral lease and pays rent, it creates a tenancy-at-will. If the tenant remains in possession or holds over 'by operation of law, it becomes a tenancy for year to year and can be terminated on the part of the landlord only by giving the tenant written notice to vacate at least 60 days before the end of the year.'" *Busby v. Stimpson*, 542 S.W.2d 551, 554 (Mo.App. 1976). In this particular action, the court appears correctly to have characterized the tenancy at will as one from month to month rather than one from year to year.[2]

---

1. "If an attorney is employed to manage a party's conduct of a lawsuit he has *prima facie* authority to make relevant judicial admissions by pleadings, by oral or written stipulations, or by formal opening statement, which unless allowed to be withdrawn are conclusive." McCormick's Handbook of the Law of Evidence section 267, p. 643 (1972).

2. It would appear that, in order to have the form of a tenancy of will which runs from year to year, the tenant must have been on the land for at least a year and held over. Short of that, it would not be possible to derive any intention of the parties by their conduct that the tenancy was to last at least a year. "'The mere taking or holding possession is unimportant ... So also the mere payment of additional rent, where an

84

In either case, it appears, moreover, the damages would have been the same as those which have been awarded by this court in its challenged judgment.[3] But both tenancies are tenancies at will, which new counsel for the plaintiffs now expressly admits do not exist in this case.[4] And the applicability of the Statute of Frauds, as observed above, rules out the possibility of any other form of relief on the basis of the facts of this action. This court therefore has no alternative except to vacate and set aside the judgment of August 8, 1986, and accordingly enter judgment for defendant on the plaintiffs' complaint for relief.

Ordinarily, this court would be extremely reluctant to permit new counsel, unattended by the formalities of an entry of appearance and appointment by the court in a chapter 11 case such as this,[5] and without that amenity of notifying former counsel of a change of representation,[6] to intrude into a case in this manner and make statements which divest his purported clients of a final judgment. In this case, however, in a recent hearing, the plaintiffs orally advised the court that it was their wish that they be represented from that point on by counsel whose motion to alter or amend judgment provides the basis for this ruling.[7] Under such circumstances, the court must accept the admissions of counsel as those of the plaintiffs.

Accordingly, it is hereby,

ORDERED that the hearing on defendant's motion to alter or amend the judgment of this court of August 8, 1986, previously set for September 18, 1986, at 11:00 a.m., in Joplin, Missouri, be, and it is hereby, cancelled. It is further

ORDERED that the plaintiffs' motion of August 18, 1986, to alter or amend the judgment of this court of August 8, 1986, to the effect that plaintiffs have and recover the sum of $6666.67 from defendants be, and it is hereby, granted. It is further, accordingly,

ORDERED, ADJUDGED AND DECREED that that order be, and it is hereby,

agreement for a new lease is set up, is a circumstance of little importance, inasmuch as it may be referred to a holding from year to year after the expiration of the old lease, or to other inducements to its payment'.... In the instant case the question ... is whether the defendant's continued possession and remittance of several monthly checks for rent accepted and retained by the defendant, would be as reasonably referable to a month to a month tenancy arising out of a mere holding over and payment of rent for same.... (S)uch conduct of the parties constitutes nothing more than a holding over by the defendant for a few months on a month to month basis." *Rosenberg v. Gas Service Company,* 363 S.W.2d 20, 28 (Mo.App.1982) (in which the tenant held over for only 8 months following the termination of a five-year lease.) "The rule is general in its application, and fundamental in principle, that acts which are referable to something else than the verbal agreement, and which may be ordinarily otherwise accounted for, do not constitute sufficient part performance of it ..." *Emmel v. Hayes,* 102 Mo. 186, 14 S.W. 209, 210. "The law is well settled that where a tenant enters into the possession of agricultural lands under an oral lease or contract, or one that is oehterwise void or defective, and pays rent to his landlord, it creates a tenancy at will and *if the tenant remains in possession,* by operation of law, it becomes a tenancy from year to year and can be terminated on the part of the landlord only by giving the tenant a written notice to vacate at least 60 days before the end of the year." *Coleman v. Fletcher,* 238 Mo.App. 813, 188 S.W.2d 959, 963 (1945) (Emphasis added.) (This was a case in which the tenant remained in possession for more than a year.)

3. The same claimed damages would relate to the failure to give notice, whether a month in advance of the termination or two months in advance of the same termination.

4. See, e.g., *Hauer v. Harkreader,* 221 S.W. 813 (Mo.App.1920).

5. In which the court must approve the appointment of counsel for the debtor.

6. "If a lawyer knows a client has previously obtained counsel, he should not accept employment in the matter unless the other counsel approves or withdraws, or the client terminates the prior employment." See EC 2–31 of Rule 4 of the Missouri Supreme Court Rules.

7. The hearing was held in Joplin, Missouri, on debtors' motion to set aside a prior dismissal of the underlying chapter 11 case. It was held on August 8, 1986. It was then that the debtors for the first time informed current counsel that other counsel would replace them in this case.

vacated and set aside. And it is further, accordingly,

ORDERED, ADJUDGED AND DECREED that judgment be, and it is hereby, entered for defendant on plaintiffs' within complaint for relief.